SALLY LANN, Plaintiff, *v.* UNITED STEEL WORKS CORPORATION, Defendant.

Supreme Court, Special Term, Kings County, January 14, 1938.

*Joseph G. Hall* [*Abraham L. Pomerantz, Abraham Marcus* and *Julius Levy* of counsel], for the plaintiff.

*William D. Mahon* [*William J. Mahon* and *Louis E. Lynch, Jr.,* of counsel], for the defendant.

Steinbrink, J. Plaintiff moves for summary judgment to strike out from the answer certain denials therein contained and to strike out the affirmative defenses. The action herein was brought to recover the face amount of eighteen bonds of the defendant corporation made payable to the order of Darmstadter und National-bank Kommanditgesellschaft auf Aktien of Berlin, hereinafter called the bank, and indorsed by the latter in blank. In the complaint it is alleged that the plaintiff is a citizen of the State of New York and is the owner and holder of the bonds sued upon; that according to the terms of the bonds the defendant called the entire issue for redemption before the date of maturity at 102 per cent of the principal amount, with an option in the bondholders to require payment in certain designated places in Germany, Holland or Sweden; that on or about October, 1936, the defendant called the entire issue for redemption for April 1, 1937; that after the accelerated maturity date the plaintiff presented her bonds for payment in Amsterdam, Holland, but their payment was refused. Plaintiff demands judgment in the sum of $7,339.37, which represents the value of Dutch guilders based upon the face amount of reichsmarks due.

The answer denies upon information and belief that the bonds provided for payment in Holland in the legal tender of Holland and that the issue was called for redemption. It also denies knowledge or information sufficient to form a belief as to whether the plaintiff is the owner and holder of the bonds sued upon and as to whether the plaintiff presented the said bonds for payment in Holland. For a first affirmative defense the defendant alleges, on information and belief, that the plaintiff is not a *bona fide* resident of New York and is not a real party in interest, but that the bonds in suit are owned by a non-resident. For a second affirmative defense, the defendant alleges that it is forbidden by the laws of the German Reich to make payments on the bonds in the manner demanded by the plaintiff; that the said laws are not confiscatory nor of such a character as to be deemed repugnant to our public policy.

Since complete and voluminous affidavits have been submitted on both sides, the answer will first be tested by the rules governing the disposition of motions for summary judgment.

With respect to the denials, no issues of fact are raised. The denial, upon information and belief, that interest and principal were to be paid in the legal tender of Holland raises no issue, for the plaintiff has submitted a translation of the bonds in suit to which the defendant interposes no exception. The meaning of the translated language involves a question of law for the court's determination. The defendant cannot create a factual issue by simply asserting

without more, that the proper translation of the language of the bond " is a question of fact." When confronted with the demands for summary judgment, it must offer proof to show that the plaintiff's translation is incorrect.

The denial of knowledge or information sufficient to form a belief as to whether the plaintiff is the owner and holder of the bonds in suit is unsupported by facts. The plaintiff is in possession of the bonds, which are payable to bearer, and in the absence of controverting facts there must be a finding that she is the owner of these bonds. (*General Investment Co.* v. *Interborough Rapid Transit Co.*, 200 App. Div. 794; affd., 235 N. Y. 133.)

The denial, upon information and belief, that the defendant called the bonds for redemption cannot have been seriously made. Either the call was made or it was not, and no one is in a better position than the defendant to state the facts with respect thereto. This denial is likewise unsupported by any proof, and from the affidavits in opposition the court is free to assume that it has been abandoned.

Nor has the defendant advanced any facts in support of its denial of knowledge or information sufficient to form a belief as to the plaintiff's presentment of the bonds for payment at one of the designated offices in Amsterdam, Holland. In view of the proof of presentment and protest included in the moving papers, the bare denial raises no issue of fact.

For these reasons the first affirmative defense, which purports to dispute the plaintiff's ownership of the bonds, has not been sustained. This brings us to the nub of the controversy. What is the meaning of the language of the bonds? Do they contemplate performance in Germany alone or, as the plaintiff contends, in Sweden or in Holland, as well as in Germany? If performance at the option of the bondholders may be required in either Sweden or Holland, is payment to be made in legal currency of those countries?

Under the terms of the bonds the defendant agrees to pay interest at the rate of seven per cent per annum and to repay on the date of maturity to the Darmstadter und Nationalbank Kommanditgesellschaft auf Aktien of Berlin or to its order. " Of Berlin " is translated from the words " zu Berlin." The defendant contends that the place of performance is Germany to the bank, basing its contention upon translation of " zu Berlin " to mean " in Berlin " instead of " of Berlin." Regardless of whether the preposition is " of " or " in," the word Berlin was inserted not to fix the place of performance but to describe the situs of the bank. The words " or its order " provide for payment to bondholders after indorsement of the bonds in blank by the bank. Such payments, under articles 5 and 7 of the loan agreement, are to be made in a designated list of offices in

Germany, Holland and Sweden, at the option of the bondholders. All of this would be quite meaningless if, as the defendant urges, only payment in Germany was intended. Nor is this conclusion affected by the fact that the bank was charged with certain duties in connection with payment of the bonds. As trustee and fiscal agent, payment was to be made through it, it was to have supervision of all payment offices, and it was to receive the bonds when paid. Imposition of these duties, which are purely administrative, cannot be held to affect the basic obligations of the defendant.

The bonds provided for redemption before maturity at the option of the defendant. The call for redemption was to be made by publication in accordance with article 19 of the loan agreement, which provides that it shall be made in two designated German newspapers and in a newspaper of Amsterdam or Stockholm. A call was published in the designated German newspapers and in an Amsterdam newspaper, calling for redemption on April 1, 1937, of all of the still outstanding bonds. The effect of the call was an acceleration in the date of payment of the bonds.

The defendant advances a rather novel theory. It argues that the notice of redemption was not a promise to redeem in accordance with the terms of the bonds, but rather a promise to pay in accordance with the notice into which there must be read the German restrictive legislation then in force; that in interpreting the notice it cannot be assumed that the defendant intended to do something that existing German laws expressly prohibited, namely, payment of the principal of the bonds in a foreign country in the legal currency of that country. To quote from the defendant's brief: " The idea that a German debtor, by calling bonds for redemption, intends to publicly violate foreign exchange laws and incur their penalties is as improbable as it would be to assume that an American corporation by calling gold bonds for redemption, intended to violate the joint resolution of Congress, and pay in gold or gold value rather than in dollars to the nominal value of the bonds." The argument is is entirely fallacious, for it assumes the very issue in proof, namely, the applicability of the German foreign exchange laws to the bonds in suit. It is based upon a premise patently false that the gravamen of the plaintiff's action is not the bonds but the notice of redemption. The notice of redemption, however, did not create any new obligation on the part of the defendant. It simply served to accelerate the date of payment. Upon execution and delivery of the bonds the rights and obligations of the parties were fixed. Those rights and obligations cannot be affected by a call for redemption, which is not an independent promise to pay but only a notice to the bondholders that they would be entitled to payment at the accelerated

maturity. (*Smyth* v. *United States, United States* v. *Machen,* 302 U. S. 329; 58 S. Ct. 248.)

It seems clear that under the terms of the bonds payment could be required at the accelerated maturity in Amsterdam, Holland. That being so, was payment to be made in guilders, the legal currency of Holland, or in reichsmarks? The bonds provided that payment in Amsterdam shall take place at the rate of exchange on Berlin. That very plainly implies payment in the legal currency of Holland, for otherwise there would be no occasion for reference to " the rate of exchange on Berlin." These words are used to measure the extent of the obligations in reichsmarks by their exchange value in guilders. Such is the extent of the defendant's obligations unless they have been affected by the German foreign exchange laws. Briefly, those laws direct that debts due to foreigners from Germans must be paid by the debtor in reichsmarks to the credit of the foreign creditor at the conversion office for foreign debts; that upon such payment the obligations of the debtors to the foreign creditors shall be extinguished; and that foreign exchange cannot be disposed of without approval of the government. Governmental consent to payment of the bonds in suit in any manner other than that directed by the aforesaid laws has been refused. Under the second affirmative defense the defendant pleads that the requested performance should be excused because it would involve an act expressly prohibited by German law. The validity of this defense depends upon the law applicable. The rule of conflict of laws of this State is that all matters connected with performance of a contract are regulated by the law of the place where the contract by its terms is to be performed. (*Union National Bank* v. *Chapman,* 169 N. Y. 538, 543; Restatement of the Law of Conflicts of Laws, § 360.) Here, by virtue of the option exercised by the plaintiff, the place of performance is fixed as Amsterdam, Holland. (*Anglo-Continentale Treuhand, A. G.,* v. *St. Louis Southwestern R. Co.,* 81 F. [2d] 11; certiorari denied, *Henwood* v. *Anglo-Continentale Treuhand, A. G.,* 298 U. S. 655.) We must, therefore, look to the laws of Holland to determine whether the defense of illegality may be properly introduced. Foreign law must be proved as a fact. Both plaintiff and defendant have submitted affidavits by experts on the laws of Holland. There is no real issue of fact, for one of the defendant's experts has expressed the following opinion: " If it is assumed that the law of the Netherlands governs this contract, I do not believe that German prohibiting statutes would constitute a good defense of ' vis major.' It is settled law in the Netherland that a prohibition to pay, imposed by a foreign law upon the debtor, does not constitute ' vis major ' if the contract is governed by Netherland law. In this respect I

fully agree with the opinion of M. I. Mesritz, submitted on behalf of the plaintiff." It must, therefore, be found as a fact that under the domestic law of Holland the German restrictive regulation does not excuse non-performance. Two of the defendant's experts on the laws of Holland have expressed the opinion that under the conflict of laws of Holland, the bonds in suit would be governed by the internal laws of Germany. This is quite beside the point, for in our jurisdiction the conflict of laws of Holland will not be applied. The conflict of laws of this State direct us to the laws of Holland and the applicable laws of Holland are its internal laws, not its conflict of laws. To adopt any other view would involve acceptance of the " renvoi " doctrine, which has been rejected almost unanimously. (*Matter of Tallmadge,* 109 Misc. 696; Restatement of the Law of Conflict of Laws, § 7; Lorenzen, "Renvoi" in the Conflict of Laws, 29 Yale Law Jour. 214; Schreiber, The Doctrine of Renvoi in Anglo-American Law, 31 Harvard Law Rev. 523; The Renvoi Doctrine in Conflict of Law, 19 Columbia Law Rev. 496; 1 Beale, Conflict of Laws, pp. 55, 57.) No useful purpose will be served by adding to the great mass of literature on the subject.

Having exercised the option by demanding payment in Amsterdam, Holland, the plaintiff was entitled to receive payment in guilders based on the rate of exchange on Berlin. For the equivalent of such guilders in dollars she is now entitled to judgment.

Plaintiff's motion for summary judgment is accordingly granted.