**Ada HOBBS, Plaintiff**

v.

**FIRESTONE TIRE & RUBBER CO.,**
**Defendant.**

**Raymond HOBBS, Plaintiff**

v.

**FIRESTONE TIRE & RUBBER CO.,**
**Defendant.**

**Civ. Nos. 1112, 1125**

United States District Court
N. D. Indiana,
Fort Wayne Division.

June 23, 1961.

Ralph W. Probst, Kendallville, Ind., Gilmore S. Haynie, Fort Wayne, Ind., for plaintiff.

Hunt & Suedhoff, Ft. Wayne, Ind., for defendant.

GRANT, District Judge.

This matter is presently before the Court on defendant's Motion for Summary Judgment. The grounds alleged in support of the Motion for Summary Judgment are that the above-entitled actions were "not commenced within the time required by law, and (are) barred by the statute of limitations, there being no genuine issue as to any material fact on the issue of the statute of limitations."

Before embarking upon a discussion and disposition of this Motion, a brief statement of the salient facts would be in order here:

The Complaint in Civil No. 1112 (Ada Hobbs) was filed on December 15, 1958 and that in Civil No. 1125 (Raymond Hobbs) on February 3, 1959. The plaintiff, Ada Hobbs, seeks recovery for personal injuries sustained by her when the automobile, driven by her husband, Raymond Hobbs, in which she was a passenger, was struck from behind by an automobile owned by the defendant, Firestone Tire and Rubber Co., being then driven by its agent, Michael R. Chiara, near Flemingsburg, Kentucky, on December 4, 1957. The plaintiff, Raymond Hobbs, having sustained no personal injuries, seeks recovery for medical expenses necessitated by his wife's injuries, loss of her society, aid, etc., property damage to his automobile, the cost of household help and wages lost by virtue of his having to be absent from work to care for his wife. Mr. Chiara, originally a defendant in these actions, is no longer a party, having successfully attacked the service of summons by a Motion to Quash which was sustained by this Court.

The issue of the expiration of the statute of limitations was originally injected into each of these actions by the de-

fendant's Second and Fourth Paragraphs of Answer. In substance, these defenses assert that the Kentucky statute of limitations period of one year is applicable to the facts of this case and that inasmuch as each of these actions was filed more than one year after the date of the accident, December 4, 1957, both of these actions are barred.

Counsel for both parties have submitted several briefs which the Court has examined and considered in detail. Notwithstanding these copious and well-written briefs, the Court has independently researched the authorities preparatory to arriving at this decision.

Initially it should be pointed out that generally the defense of the statute of limitations may properly be raised by a Motion for Summary Judgment. The Creditors' Committee of the Horton Corporation v. Goodhart, 1956, 98 U.S.App. D.C. 144, 233 F.2d 23; Roe v. Sears, Roebuck & Co., 7 Cir., 1943, 132 F.2d 829; 6 Moore, Federal Practice § 58, p. 2661 (1953).

In order to avoid the possibility of unnecessary duplication and as an aid to better understanding, it would appear advisable at this point to set out in detail the defendant's assertion that the statute of limitations bars the instant action, and also to quote the pertinent portions of all the statutes asserted to control the factual situation existent herein.

On December 4, 1957, the statute of limitations applicable to personal injury actions, as enacted by the Indiana legislature and as contained in Burns' Ann. Stat. § 2–602 (1946 Replacement—1960 Cum.Pocket Supp.), was as follows:

"Limitation of actions * * *.

"The following actions shall be commenced within the period herein prescribed after the cause of action has accrued, and not afterwards.

"First. For injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two (2) years * * *."

Normally, the above statute of limitations period of two years would be applicable to actions filed both in the Courts of Indiana as well as the Federal District Courts sitting in Indiana. However, Indiana, like most other states, has what is known as a "borrowing statute" which imposes upon the trial court the duty of applying the statute of limitations of a sister state under certain circumstances. Unlike the borrowing statute of many of its sister states which refer to and make applicable the statute of limitations of the state wherein the injury occurred, the Indiana borrowing statute directs the trial court, in cases where the defendant is a non-resident of Indiana, to apply the statute of limitations of the state where the defendant resides. The Indiana borrowing statute as embodied in Burns' Ann.Stat. § 2–606 (1946 Replacement—1960 Cum. Pocket Supp.) provides as follows:

" * * * when a cause has been fully barred by the laws of the place where the defendant resided, such bar shall be the same defense here as though it had arisen in this state: Provided, That the provisions of this section shall be construed to apply only to causes of action arising without this state."

It is undisputed that the defendant, Firestone Tire & Rubber Co., is a resident of the State of Ohio insofar as the term "resident" is employed by the statute. It follows that by virtue of section 2–606, this Court is referred to the laws of Ohio to determine whether the instant actions have been barred by the applicable statute of limitations.

It is at this point that the defendant and the plaintiffs cease to be in agreement and at which the crucial issue to be resolved first presents itself. The plaintiffs contend that by virtue of the Indiana borrowing statute the Court is referred to Section 11224–1 of the Ohio Code (Ohio Revised Code, § 2305.10), which is the Ohio Statute of Limitations, providing as follows:

"Two year; bodily injury or injuring personal property. An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose." (112 V. 238, Eff. Aug. 2, 1927)

The plaintiff further asserts that this Court must then conclude that inasmuch as the Ohio Statute of Limitations is two years in personal injury cases, it had not run at the time of the filing of each of these actions and therefore the defendant's Motion for Summary Judgment should be denied.

The defendant, on the other hand, contends that the words "when a cause has been fully barred *by the laws of the place where the defendant resided*" should be interpreted literally and this Court must look to all the laws of Ohio rather than, merely, to the Ohio Statute of Limitations. (Emphasis supplied.)

This literal interpretation, asserts the defendant, would refer this Court to and necessitate application of the Ohio Borrowing Statute as found in Ohio Code, § 11234 (Ohio Revised Code, § 2305.20):

"Action, time for bringing.

"If the laws of any state or country where the cause of action arose limits the time for the commencement of the action to a less number of years than do the statutes of this state in like causes of action then said cause of action shall be barred in this state at the expiration of said lesser number of years."

To complete the summary of the defendant's position necessitates the borrowing of the Kentucky Statute of Limitations if the latter is less than the Ohio two-year limitation period stated above. Section 413.140(1) of Baldwin's Kentucky Revised Statutes Annotated (1955) provides:

"The following actions shall be commenced within one (1) year after the cause of action accrued; (a) An action for an injury to the person of the plaintiff or of his wife, child, ward, apprentice or servant."

Thus, under the defendant's theory both of the instant actions would be barred because brought more than one year after the date the causes of action accrued, December 4, 1957.

Having thus stated the respective contentions and positions of both the plaintiffs and the defendant, the Motions for Summary Judgment are now ready for disposition by the Court.

The question to be determined in the disposition of these Motions is the controversial conflicts of law theory of "renvoi", and its acceptance or non-acceptance by this Court. Consequently the Court has found it necessary to research the authorities on renvoi, both textwriters' and case decisions, in order to determine the proper disposition of the Motions for Summary Judgment.

The following statements from Goodrich and American Jurisprudence will suffice as a general statement of the theory of renvoi:

"The principles of private international law or conflict of laws are of ancient origin and are part of the common law in England and in the United States. According to the general view, where a question comes before a court which, according to the law of the forum as to conflict of laws, is to be determined by the law of another jurisdiction, the question is determined by the law of such other jurisdiction applicable to the precise question; the law of such other jurisdiction as to conflict of laws is not taken into consideration.

"Another theory, known as the 'doctrine of renvoi', has been advanced. The theory of the doctrine of renvoi is that the court of the forum in determining the question before it, must take into account the whole law of the other jurisdiction, including, not only the local law of such other jurisdiction, but also its rules as to conflicts of laws, and then apply the law as to the actual question which the rules of the other jurisdiction prescribe. This may be

the law of the forum. The doctrine of renvoi has generally been repudiated by the American authorities." 11 Am.Jur. "Conflict of Laws" § 3, p. 296 (1937).

"In the United States when the Conflict of Laws rule of the forum refers to the law of a foreign state, the reference is generally taken to be to the internal law of that foreign state and not to its Conflict of Laws rules. Whether the reference should be rather to the Conflict of Laws rule of the foreign state is a matter that has been much discussed, and brings up the problem of renvoi.

"The theory of renvoi has been the subject of much legal discussion, most of which has rejected its application in this country in all but a few citations." Goodrich, Conflict of Laws, p. 20 (1949).

As indicated by the above-cited quotations the authorities in this country generally reject renvoi. The American Law Institute in its Restatement of Conflict of Laws, Sec. 8, accepts renvoi in two instances, these being where the title to land is in question and where the validity of a divorce decree is attacked. The restatement otherwise provides:

"§ 7 Law of Forum Applied.

"Except as stated in § 8, when there is a difference in the Conflict of Laws of two states whose laws are involved in a problem the rule of Conflict of Laws of the forum is applied:

"(a)　＊　＊　＊

"(b) where in making the choice of law to govern a certain situation the law of another state is to be applied, since the only Conflict of Laws used in the determination of the case is the Conflict of Laws of the forum, the foreign law to be applied is the law applicable to the matter in hand and not the Conflict of Laws of the foreign state."

The comment accompanying Section 7 of the Restatement demonstrates that the drafters were well aware that by the use of this rule the decision reached might very well be contrary to that which a court in the foreign state might otherwise reach if the case had been heard there instead.

Comment on Clause (b):

"c. Choice of Law. When an action is brought in one state upon a contract made in another state, the court at the forum must decide, by its own rules of Conflict of Laws, by the law of what state the situation is to be controlled. If it decides that the law of the second state is to be applied, it must thereupon decide whether it is the entire law of the other state, including its Conflict of Laws rules, or only its rules pertaining to the law of contracts when no question of foreign law is involved. Under the rule stated in this Section, the court at the forum applies only the contract law of the other state.

"d. The rule stated in this Section may result in a decision contrary to that which would be reached by a court in that state, the law of which is being applied, by reason of the fact that a different Conflict of Laws rule prevails in the latter state."

That both the Indiana and Ohio Borrowing Statutes are a part of the Conflict of Laws of those states is borne out by the following statement taken from Leflar's The Law of Conflict of Laws, § 66, p. 120 (Bobbs Merrill Company, Inc. 1959):

"A considerable number of states have enacted 'borrowing statutes' which, to varying degrees, change the common law rule. Generally these statutes either bar the action if it is barred by the statute of the place where the defendant, or both of the parties, resided, or if it is barred by the statute of the place where the cause of action arose. In one sense, such statutes do not change the rule that it is the statute of limitations at the forum

which governs; rather they afford an instance of some other law being given a certain effect under the law of the forum. They are Conflict of Laws statutes of the forum, and are so diverse that their main effect has been to produce almost universal confusion."

Notwithstanding the considerable volume of commentary on the subject of renvoi, research reveals a very limited number of case decisions in which the courts of the United States have had to determine whether to accept or reject the renvoi doctrine. In re Tallmadge, Sur.Ct.1919, 109 Misc. 696, 181 N.Y.S. 336, is considered by many authorities to be the leading American case on the subject. The issue to be decided in that case was whether the law of France or that of New York governed the disposition of a testamentary bequest, the legatee of which predeceased the testator. The Court, after considerable discussion, concluded that the testator had died domiciled in France rather than in New York as contended by the contestant of the will. Applying the New York Conflict of Laws rule as to the disposition of the decedent's property the court was referred to the law of France, the place of decedent's residence or domicile. However, reference to the whole of French law, as contended by the contestant, revealed that the courts of France would apply the law of New York as being the national law of the testator. In rejecting the doctrine of renvoi the Court stated:

"In support of this contention contestant called an expert, Dr. C. H. Huberich. He was of the opinion that the French courts would apply in this case the national law of the testator, and cited numerous French decisions and the opinions of French law writers in support of his theory. This is undoubtedly a correct statement of the general principle of French jurisprudence in reference to the conflict of laws in such cases, and the acceptance of Dr. Huberich's theory in the present case

would result in the application of the internal law of New York to the construction of the will in accordance with the French view of the conflict of laws.

"There is thus squarely presented to the Court for consideration the complicated and difficult theory known as the 'renvoi' (of which the word 'remission' is perhaps a fair translation). In other words, the referee is called upon to decide whether section 47 of the Decedent Estate Law, in referring the construction of the residuary clause of Coster Chadwick's will to the law of France, meant that the specific provision of French law applicable to lapsed legacies should be applied, or the French view of the conflict of laws with its reference back to the law of New York for the determination of the question of this lapse. (181 N.Y.S. at page 342) * * *

"The courts and writers sanctioning 'renvoi' would insist that in such a case as that at bar the New York court, acting under section 47, must apply the French law, meaning not the territorial law of France, but the totality of French law, including its method of determining questions of conflict of laws, and that therefore it will apply the New York law, for the French view of the conflict of laws refers the construction of the will to the national law of the testator. Under this view the New York court would accept the reference. * * *

"The case thus presented to a New York court differs not at all in principle from a case arising in France with regard to the construction of the will of an American domiciled in France. In such a case the French court would refer the question of construction [of the will] to the New York law, and, as section 47 of the Decedent Estate Law refers the construction back to the French law (the domiciliary law),

the French court would apply the French law. The French court accepts the 'renvoi' for 'renvoi' is a part of the law of France. * * *

"But, logically, why should the inquiry stop with the internal law of New York on the reference from the French law? Why, indeed, should the reference be to the internal law of New York and not to its conflict of laws rule again? In the first instance, the New York court, in seeking to apply the French law, was, by hypothesis, referred to the French conflict of laws rule, instead of its internal laws. Why not the same character of reference upon the return? It is clear that the logical result of this reference back and forth to the conflict of laws rule of the respective countries would be an indefinite oscillation between the two laws. As well said by Buzzati (Rinvio, p. 77), quoted in Bate:

"This is 'an eternal renvoi from one rule of conduct to another, without ever descending to the application of an internal law, a closed circle with no exit. It is the application of lawn tennis to international law.'

"But this is a practical, if not a logical, absurdity. A possible alternative is the application of French internal law on the second reference. For, if a New York court, in attempting to apply French principles governing the conflict of laws, must regard itself as a French court, a view that has been urged by many of the courts indorsing 'renvoi' it should apply the law as a French court would apply it. But the French court would look to the national law (the law of New York), and then accept the reference back to France—in other words would apply the law of France—so that the New York court, sitting as a French court, would apply the French law; the result being the same as if there were no 'renvoi' at all, in other words, as if the New York court ap-

plied French territorial law in the first instance under its own view of the conflict of law. (181 N.Y.S. at pages 343–345). * * *

" * * * I am of the opinion that the 'renvoi' is no part of New York law * * * (181 N.Y.S. at page 345).

"The 'renvoi' doctrine is not supported by reason. It inconsistently requires either the application of internal New York law after the reference by the French law, although the first reference had been from New York to the French conflict of laws rule, or the endless reference back and forth, which has been called a circulus inextricabilis * *

"The most practical argument advanced in favor of the 'renvoi' is that it would make for uniformity of decisions amongst the different national courts called upon to pass upon the succession of a decedent owning movables in various states * * *. But this contention has, I think, been shown to be unsound in substantially all cases. See Bate, Notes on the Doctrine of Renvoi, 31 Harvard Law Review, and 10 Columbia Law Review (181 N.Y.S. at page 346).

" * * * Professor Lorenzen sums the matter up as follows (10 Columbia Law Review, p. 344):

" 'The renvoi doctrine is, therefore, no part of the conflict of laws of the United States. Its introduction into our law would be most unfortunate, on account of the uncertainty and confusion to which it would give rise in the administration of justice, and its demoralizing effect, upon the future development of the conflict of laws.'

"There is thus no authority which compels me to apply the 'renvoi' doctrine to the case at bar. The way is unmarked in this state, and should be determined in accordance with sound legal principles. On account of its inconsistency with common-

law theories of the conflict of laws, its fundamental unsoundness, and the chaos which would result from its application to the conflicts arising between the laws of the states of this country, it is my opinion that the 'renvoi' *has no place in our jurisprudence.*" (181 N.Y.S. at page 348) (Emphasis supplied.) See, also, Lann v. United Steel Works Corporation, Sup.Ct.1938, 166 Misc. 465, 1 N.Y.S.2d 951, 957.

Notwithstanding the relatively few decisions involving the renvoi doctrine, no attempt will be made here to cite and/or discuss all the decisions which have considered renvoi. Instead attention is called to the law review articles cited herein, 15 C.J.S. Conflict of Laws § 7 and 11 Am.Jur. "Conflict of Laws" § 3, and the several cases cited therein, including the decisions of Gray v. Gray, 1934, 87 N.H. 82, 174 A. 508, 94 A.L.R. 1404 and Mason v. Rose, 2 Cir., 1949, 176 F.2d 486. In the latter case, the majority opinion is criticized as having unnecessarily indicated an acceptance of renvoi in a concurring opinion by Judge Frank.

The decision in Haumschild v. Continental Casualty Co., 1959, 7 Wis.2d 130, 95 N.W.2d 814, is particularly in point because its comprehensive discussion and analysis evidences a thorough study and understanding on the part of the Court of the renvoi doctrine. A considerable portion of the opinion is set forth below:

"After most careful deliberation, it is our considered judgment that this court should adopt the rule that, whenever the courts of this state are confronted with a conflict of laws problem as to which law governs the capacity of one spouse to sue the other in tort, the law to be applied is that of the state of domicile (Wisconsin). We, therefore, expressly overrule the cases of Buckeye v. Buckeye [203 Wis. 248, 234 N.W. 342] * * *. (95 N.W.2d at page 818) While the appellant's counsel did not request that we over-

rule Buckeye v. Buckeye, supra, and the subsequent Wisconsin cases dealing with this particular conflict of laws problem, he did specifically seek to have this court apply California's conflict of laws principle, that the law of the domicile is determinative of interspousal capacity to sue, to this particular case. However, to do so would violate the well recognized principle of conflict of laws that, where the substantive law of another state is applied, there necessarily must be excluded such foreign state's law of conflict of laws. Restatement, Conflict of Laws, p. 11, sec. 7(b); 11 Am.Jur. Conflict of Laws, p. 296, sec. 3; 15 C.J.S. Conflict of Laws § 7, p. 872; Griswold, Renvoi Revisited, 51 Harvard Law Review 1165, 1170, 1173; and note in 8 George Washington Law Review 559.

"The reason why the authorities on conflict of laws almost universally reject the renvoi doctrine (permitting a court of the forum state to apply the conflict of laws principle of a foreign state) is that it is likely to result in the court pursuing a course equivalent to a never ending circle. For example, in the instant case, if the Buckeye v. Buckeye line of Wisconsin cases is to be followed, the Wisconsin court first looks to the law of California to see whether a wife can sue her husband in tort. California substantive law holds that she cannot. However, California has adopted a conflict of laws principle that holds that the law of the domicile determines such question. Applying such principle the court is referred back to Wisconsin law because Wisconsin is the state of domicile. Again the court applies Wisconsin law and, under the prior holdings of the Buckeye v. Buckeye line of authorities, would have to again refer to California law because such line of cases does not recognize that the law of domicile has anything to do with interspousal immunity, but

holds that the law of the state of injury controls.

"Wisconsin certainly should not adopt the much criticized renvoi principle in order not to overrule the Buckeye v. Buckeye line of cases, and still permit the plaintiff to recover. Such a result we believe would contribute far more to produce chaos in the field of conflict of laws than to overrule the Buckeye v. Buckeye line of cases and adopt a principle the soundness of which has been commended by so many reputable authorities."

Were this Court to accept and apply the renvoi doctrine, it would be referred to the Kentucky Statute of Limitations by application of the Ohio Borrowing Statute. The Kentucky limitation period in personal injury actions is one year. Notwithstanding the fact that counsel have made no mention of the next step in the renvoi process, that is, reference to the Conflict of Laws of Kentucky, the Court has, itself, culled the Kentucky statutes in order to apprise itself of the Kentucky Borrowing Statute (Kentucky Revised Statutes § 413.320 (1942)).

Fortunately, the Kentucky Borrowing Statute provides for reference to the law of the place of collision only if the Statute of Limitations there is shorter than Kentucky's one year period of limitation. This statute, being substantially the same as the Ohio Borrowing Statute, would, of course, not be applicable in the instant case since the collision took place in Kentucky rather than in a sister state. But this coincidental fact cannot except this case from otherwise being treated in the same manner as if the Kentucky Borrowing Statute had, in fact, been similar to that of Indiana and made reference to the law of the defendant's residence, i. e. Ohio. Had the latter been true, then we would be confronted with the never ending circle referred to in the Tallmadge case.

■ We are here confronted with the necessity of accepting or rejecting the "renvoi doctrine" notwithstanding the fact that there is not present in the instant case the "circulus inextricabilis" attendant in the usual renvoi situation. While to allow the reference to the Kentucky Statute of Limitations in the case at bar would not result in the type of confused and illogical situation, about which we have been so often and ably warned by both the courts and the text-writers, nevertheless, such action on the part of this Court would constitute a recognition and acceptance of the "renvoi doctrine" as a sound legal principle and create an ill-desired precedent for the future. If this Court is to find for the defendant in the instant action, it must be prepared to fly in the face of sound legal principles and accept the "renvoi doctrine". This, the Court is not prepared so to do. Renvoi is not a part of the law of the United States and this Court is not about to do or say anything to the contrary.

Turning, for a moment, to the decisions cited by the defendant in its briefs in support of the Second and Fourth Defenses (raising the defense of the Statute of Limitations), the Court has examined them and feels that they are not in point. The Indiana decisions cited merely demonstrate the fact that the Indiana courts do apply the provisions of the Indiana Borrowing Statute but none of the cases cited goes beyond application of the Statute of Limitations of the sister state of which defendant is a resident. The precise question here raised is not involved in those Indiana decisions cited by the defendant. These decisions, if applicable at all, favor the plaintiff's position since the courts apply only the internal law of the sister state. The Ohio decisions referred to by the defendant merely serve to illustrate how the courts of Ohio have invoked the provisions of the Ohio Borrowing Statute in cases before them. In these decisions, Ohio courts were merely applying the Ohio Borrowing Statute in the first instance, a factual situation totally different from that involved here where a Federal Court, sitting in and applying Indiana law, refers to Ohio law. These

Ohio decisions, therefore, are totally inapplicable to the facts in the instant case.

In studying the defendant's briefs, one decision, that of the United States Court of Appeals for the Seventh Circuit in Vandevoir v. Southeastern Greyhound Lines, 1945, 152 F.2d 150, appears repeatedly and is relied upon heavily by the defendant in support of its position. For this reason, this Court feels that a brief discussion of the Vandevoir case, pointing out its inapplicability to the case at hand, would be appropriate at this point.

In the Vandevoir case the plaintiff, a citizen of Indiana, was injured when the bus, owned and operated by the defendant, a citizen of Kentucky, was involved in an accident in Tennessee. Action was brought in the United States District Court for the Southern District of Indiana and the Court of Appeals upheld the lower court's finding that the action was barred by the Kentucky one-year statute of limitations. Nowhere in the reported decision is any reference made that in applying the Indiana Borrowing Statute, it was necessary to look to both the internal as well as the Conflict of Laws rules of Kentucky. Instead, the Court looked only to the Kentucky Statute of Limitations without a mention of, or reference to, the Kentucky Borrowing Statute. The Vandevoir decision fails to support the defendant's Motion for Summary Judgment, and, therefore, is not applicable in the instant case.

■ In the absence of Indiana cases treating the doctrine of "renvoi", this Court must and does conclude that if the Indiana courts were to be confronted with the case at bar they would adopt the position taken by the majority of jurisdictions and the text authorities, set forth above, and reject the "renvoi doctrine". Necessarily, this Court must and does also reject "renvoi".

In summary, this Court holds that the Ohio two-year Statute of Limitations controls the facts of this case and the actions filed herein were timely filed within the two-year limitation period.

The Kentucky Statute of Limitations being wholly inapplicable, the defendant's Motions for Summary Judgment are hereby denied.

In view of the disposition of the defendant's Motion, stated above, the Court finds it to be unnecessary to decide whether the Kentucky Statute of Limitations was tolled by the alleged concealment on the part of the defendant as contended by the plaintiff. The same reasoning applies to the effect of the failure on the part of the defendant, or its agent, to file an accident report as required under Kentucky law.