Owest McGivern, J.
This action presents for determination the title to personal property as between the estate of a Spanish husband, the Duke of Arion and the estate of his wife, the Duchess of Arion. The action is brought by Inzer B. Wyatt, Esq., as ancillary administrator c. t. a. of the Dulce of Arion against Logan Fulrath, Esq., as executor of the duchess and three banks, involving securities and cash in custody accounts maintained by the duke and the duchess with the banks in New York City.
This court’s jurisdiction of the action is established by the decision of the Appellate Division herein (13 A D 2d 250 [1961]) reversing an order (26 Misc 2d 554) dismissing the complaint upon the ground that plaintiff’s claims should be adjudicated in the Surrogate’s Court. The opinion of the Appellate Division, however, in no way considered the merits of this controversy.
The principal claim of the plaintiff Wyatt is that the duke and the duchess were domiciliaries of Spain, that Spanish law governs the rights of their representatives to the property in question and that under Spanish law (a) all property, with certain exceptions, owned by husband and wife, or either of them, constitutes community property, (b) on the death of a spouse half of all community property immediately vests in the surviving spouse and the other half in the estate of the deceased spouse, and (c) no agreement, gift between husband and wife or other transaction can lawfully vary the foregoing legal principles. Accordingly, the plaintiff seeks a declaration that half of each account vested in the duke’s estate upon his death in 1957, prior to the death of the duchess, which latter event occurred in 1959.
The principal claim of the defendant Fulrath is that the rights of the representatives of the duchess are governed by New York law and by agreements signed by the duke and duchess, and that the duchess at her death was the sole owner of the accounts in her name and, by right of survivorship, of the account in the joint names of the duke and the duchess. There are other subsidiary claims, principally as urged by the defendant banks, to the effect that subdivision 5 of section 134 of the Banking Law gives each bank a complete defense to the instant action.
There are four accounts as the subject of this action:
(1) An account at Guaranty Trust Company (now defendant Morgan Guaranty Trust Company of New York) in the name *1014 of the Duke of Arion. This account was used largely for the payment of Federal estate taxes on the duke’s'estate. Originally, the plaintiff claimed that such use was a conversion, but such claim was withdrawn by the plaintiff at the trial. There remains technically a demand by the plaintiff for an accounting as to this account, as well as the others, but no necessity for such an accounting has been shown. Accordingly, this account need not be further considered.
(2) An account at Guaranty Trust Company in the sole name of the Duchess of Arion.
(3) An account at defendant Chase Manhattan Bank also in the sole name of the duchess.
(4) An account at National City Bank (now defendant the First National City Bank of New York) in the names of the duke and the duchess.
The property in the account of the duchess at the Guaranty Trust originally came from a prior account at that institution in the joint names of the duke and the duchess. This joint account had been the subject of an agreement signed by the duke and duchess. This agreement stated that the assets might be withdrawn by either joint tenant during their joint lives, that on the death of either the remaining assets would belong to the survivor and that the rights of all parties were governed by New York law. The plaintiff concedes that the transfer from this joint account to the individual account was sanctioned by the duke.
Prior to the account in the name of the duchess alone at Chase Manhattan, there had been a joint account there subject to a similar agreement (although such agreement made no express reference to New York law). The assets in that joint account were transferred to the Guaranty Trust account in the name of the duchess, and subsequently she sought to have them transferred back to a new joint account at Chase Manhattan. That bank however, refused, for tax reasons, to open a new joint account, but suggested instead an account in the name of the duchess, with the duke having power of attorney. This suggestion was adopted with the approval of the duke.
The joint account at National City was also the subject of an agreement signed by the duke and the duchess, to the effect that the property in the account was subject to disposal by either or the survivor.
There is no claim made by the plaintiff that any property was put in any account in the name of the duchess, contrary to the wishes of the duke. And since virtually all of the disputed assets, at the time of the death of the duke, had at one time been *1015 in joint accounts subject to agreements signed by the duke and duchess, the basic issue herein is whether such agreements govern the rights of the parties. The plaintiff contends that such agreements are invalid under Spanish law, which, he urges, must be applied. The defendant argues that New York law applies, and that the agreements are valid.
The able and voluminous briefs submitted herein discuss the conflicts of law question at great length. Alleged precedents from many jurisdictions, as well as other authorities, are cited. But it is the considered opinion of this court that this case is governed by the decision of the New York Court of Appeals in Hutchison v. Ross (262 N. Y. 381 [1933]).
The Hutchison case involved the validity of a trust created with a New York corporate fiduciary by a husband and a wife domiciled in Quebec. The agreement was valid under New York law, but contravened the law of Quebec which forbade gifts between spouses. After a thorough review of the authorities, Judge (later Chief Judge) Lehman, writing for the majority, concluded that: ‘ ‘ the validity of a trust of personal property must be determined by the law of this State, when the property is situated here and the parties intended that it should be administered here in accordance with the laws of this State ” (p. 395).
In reaching this conclusion, he said (pp. 388-389):
“ The courts of each jurisdiction determine all judicial questions by the law of that jurisdiction. When the owner of personal property authorizes its removal from his domicile or acquires property elsewhere, he must be deemed to know that his property comes under the protection of, and subject to the laws of the jurisdiction to which it has been removed, and that appeal may be made to the courts of that jurisdiction for the determination of conflicting rights in such property. * * *
“ If we hold that a non-resident settlor may also not establish a trust of personal property here which offends the public policy of his domicile, we shackle both the non-resident settlor and the resident trustee. * * * Where a non-resident settlor establishes here a trust of personal property intending that the trust should be governed by the law of this jurisdiction, there is little reason why the courts should defeat his intention by applying the law of another jurisdiction ” (p. 394).
This court appreciates that Hutchison v. Ross (supra) dealt with a trust and that the instant case concerns custody accounts, and that there are differences between trusts and custody accounts. However, none of such differences dictates that the same conflict of laws approach should not be applicable in both situations. Indeed, much that Judge Lehman said is clearly *1016 applicable to custody accounts, and the facts and circumstances of the present case indicate that when the duke and duchess sent their property here, they were cognizant that New York courts might be called upon one day to adjudicate rights to such property. And if in handling custody accounts, New York banks had to comply with the law and public policy, not only of New York but of the domicile of their customers, then such banks would be just as unreasonably shackled as the resident trustee referred to by Judge Lehman.
The public policy of New York appears to be one of encouragement to nonresidents to do business with New York banks, in accordance with New York law. Such public policy is manifested (a) in section 3 of article XVI of the Constitution of the State of New York which exempts from taxation securities of nonresidents located in this State and property held in trust for nonresidents by New York fiduciaries (with certain exceptions not here pertinent), (b) in section 12-a of the Personal Property Law which provides that a trust of personal property situated here with a New York trustee shall be governed by New York law if the trust indenture so provides, regardless of the settlor’s domicile, and (c) in section 47 of the Decedent Estate Law, the last sentence of which provides that New York law shall govern wills so providing, regardless of the testator’s domicile.
It would not be consistent with such public policy, nor with the rationale of Hutchison v. Ross (supra) to hold that Spanish law must govern the rights of the spouses herein as to property held in local custody accounts when it is clear that they desired New York rather than Spanish law to govern their rights. And such desire on the part of both the duke and duchess was manifested by their placing the properties at issue in joint accounts, under agreements completely repugnant to Spanish law and by the fact that one agreement expressly specified that New York law was to govern.
Furthermore, subdivision 3 of section 134 of the Banking Law provides that a deposit of cash or securities ‘ ‘ made by any person ” in his name and that of another person, in form payable to either or the survivor, “ shall become the property of such persons as joint tenants ”, held for their exclusive use and payable to the survivor on the death of one of them. This legislation is not restricted to resident depositors, and no case has so limited it. It must be viewed as a legislative direction that all joint and survivor' accounts with New York banks are to be treated alike and allows no room for the operation of foreign law as to the right to cash and securities held in such accounts.
*1017 The only pertinent New York eases cited by counsel or discovered by the court relating to the title of cash or securities, with banks are Matter of Rosenbergers (131 N. Y. S. 2d 59 [1954]) and Matter of Hernandez (172 App. Div. 467 [1st Dept., 1916], affd. 219 N. Y. 566 [1916]). In the first of these cases, Surrogate Feaekenthalee held that New York law governed the validity of an agreement made in Holland by residents thereof for the opening of a joint bank account in New York, although the agreement appeared to be at variance with Dutch law. He stated that the validity of a contract is determined by the law the parties intend to be applicable, provided such law is the law of a place having a reasonable connection with the transaction, and that, since the contract provided for opening a New York bank account in a form sanctioned by New York law, the parties clearly intended New York law to govern. This case fully supports the defendants’ position herein.
In Matter of Hernandez (supra) it was held differently that Cuban law governed the rights of a widow to securities left with New York bankers by a decedent domiciled in Cuba. At page 477 (172 App. Div. 467) it was said: “ Concededly there was no express contract between the parties and, therefore, the law of matrimonial domicile governed not only as to all the rights of the parties to their property in that place, but also as to all personal property everywhere
In the instant case however, there were express contracts between the parties, to wit, the joint account agreements, and therefore the cited case is distinguishable. Furthermore, to the extent that the rationale of Matter of Hernandez conflicts with the later decision of the Court of Appeals in Hutchison v. Ross, it cannot prevail.
Yet, the plaintiff argues that the joint account agreements should not be regarded as binding, (a) because the duke did not fully understand their significance, and (b) because he had no alternative but to sign them since he wanted his assets kept in New York. But, in the opinion of this court, the evidence shows that the duke fully understood the agreements, and that he did have alternatives to joint account agreements. For example, in one instance, when a joint account was not feasible, the duke agreed that the assets be kept in the sole name of the duchess, with himself reserving power of attorney over such account. Surely, he must have known that accounts could have been in his sole name, with the duchess or anyone else having power of attorney, had he desired not to enter into a joint account agreement with right of survivorship, incompatible with Spanish law. The court, accordingly, finds that the joint account agreements were advisedly and intentionally executed by the duke.
*1018 Therefore, it is held that New York law governs rights to the cash and securities in the New York accounts and that the plaintiff, as the duke’s representative, has no interest in any of the cash and securities held at the date of the duke’s death in the accounts in the name of the duchess and in the account in the joint names of the duke and the duchess. In view of this disposition, there is no need of further considering the specific defenses raised by the banks, although the unwisdom of imposing the foreign law of nationality as an implied condition in transactions between New York banks and foreign depositors, is not to be overlooked.
One relatively minor matter remains. After the death of the duke, some assets were transferred into the account in the name of the duchess at Guaranty Trust. Such assets had, at the time of the death of the duke, been in a London account in the joint names of the duke, the duchess and their daughter. The plaintiff’s claim with reference thereto is as follows; The right to such funds, as of the duke’s death, is governed by English law. English courts would apply Spanish law in determining rights to such assets. Therefore, it is submitted that New York courts must apply Spanish law, at least as to the funds and securities in England when the duke died. The infirmity of this position is that when New York courts apply foreign law, it is internal law of the foreign jurisdiction that is applied, not the conflicts rule of such jurisdiction. The plaintiff’s claim is based on the renvoi doctrine, which is not followed in New York (Lann v. United States Steel Works Corp., 166 Misc. 465, 471 [1938]), nor has it found acceptance generally in the United States. (See Hobbs v. Firestone Tire & Rubber Co., 195 F. Supp. 56.) The law applicable to the assets in England when the duke died is English internal law, and the plaintiff does not claim that English internal law supports his position.
Accordingly, judgment is directed in favor of all defendants, dismissing the complaint herein, with costs.