Ina MAROON, Legal Representative of the Estate of Catherine Jo Harris, Deceased, and Wayne Maroon, and Ina Maroon, Individually, as husband and wife, as father and mother of Catherine Jo Harris, Deceased, Plaintiffs–Appellants,

v.

STATE of Indiana, DEPARTMENT OF MENTAL HEALTH, and State of Indiana, Department of Corrections, Defendants–Appellees.

No. 1–180A3.

Court of Appeals of Indiana, First District.

Oct. 14, 1980.

Rehearing Denied Nov. 24, 1980.

---

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for defendants–appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Ina Maroon, legal representative of the estate of Catherine Jo Harris, deceased, and Ina Maroon and Wayne Maroon, individually as mother and father of the deceased, plaintiffs--appellants, appeal from December 11, 1979, and January 3, 1980, interlocutory orders of the Hancock Circuit Court, dismissing Counts I and II of their complaint against the defendant–appellee, the State of Indiana, Department of Mental Health and Department of Corrections, and reinstating Count III which had been dismissed earlier.

On November 18, 1977, Plaintiffs filed a complaint in three counts: Count I under the Illinois wrongful death act, S.H.A. ch. 70, § 1 and § 2 (Supp.1980); Count II under the Illinois survival act, S.H.A. ch. 3, § 339,[1] and Count III under Ind.Code 34–1–1–8, Injury or death of a child; action by a parent or guardian.

All three counts contained allegations, inter alia, that: 1) in the spring of 1976, agents, employees, and servants of the Department of Mental Health and the Department of Corrections knew or in the exercise of reasonable care should have known that

Michael C. Cook, Douglas B. King, Wooden McLaughlin & Sterner, Indianapolis, Robert Douglas, Robinson, for plaintiffs appellants.

1. The State has not disputed that if Plaintiffs have any right to maintain their action under Illinois law, they have a right under Illinois law to maintain a count under this statute in addition to their count under the wrongful death act.

    "In order to alleviate the harsh and unjust result of the common law, our legislature, in 1853 enacted the Wrongful Death Act and, in 1872, enacted the Survival Statute. The purpose of each statute is distinct. It was the purpose of the Wrongful Death Act to allow the heirs of the decedent to collect for their pecuniary losses suffered as a result of the death. The Survival Statute was enacted to allow the continuation of specific types of suits that would otherwise abate under the common law due to the death of one of the parties. Under the holding of *Holton v. Daly,* 106 Ill. 131 (1882), the Wrongful Death Act provided the exclusive remedy where the decedent had died of the complained–of injuries and further provided that no action for damages could be brought under the Survival Statute when the injuries resulted in the death of the decedent. This distinction was extinguished in *Murphy v. Martin Oil Co.,* 56 Ill.2d 423, 431, 308 N.E.2d 583 (1974), wherein the court expressly overruled *Holton* and held that both the heirs and the estate may sue for injuries caused by the wrongful death. Thus, it is the law in Illinois today that the heirs may bring a suit under the Wrongful Death Act for their pecuniary losses and the estate may bring a suit under the Survival Statute to recover damages for injury to the person and property of the decedent even though death is attributable to the injuries."

    *Mattyasovszky v. West Towns Bus Company,* (1974) 21 Ill.App.3d 46, 313 N.E.2d 496, 500–501.

Michael Lee Lett was a criminal sexual deviant dangerous to the community; 2) on or about April 13, 1976, Lett was in the custody of agents, employees, and servants of the two departments; 3) Lett was released by, escaped from, or otherwise left the custody of agents, employees, and servants of the two departments on or about April 13, 1976, while they were acting within the scope of their employment; 4) negligence on the part of agents, employees, and servants of the two departments was the direct and proximate cause of Lett's release or escape from their custody; 5) after his release by or escape from agents, employees, and servants of the two departments, Lett, on or about April 19, 1976, abducted Catherine Jo Harris, a minor, from an area near where she then resided in Newton, Illinois; and 6) after abducting Catherine, Lett assaulted and killed her.

During extensive pretrial maneuvering, the trial court first dismissed Count III in response to the State's arguments that a choice of law had to be made. Next, the trial court responded to the State's arguments that Indiana law should be applied and would not allow Plaintiffs' claim, that the State owed no duty to Catherine, and that the State was immune from liability for losses resulting from the act of a person not a governmental employee, by dismissing Counts I and II because "Indiana law and not Illinois law applies."

Plaintiffs then filed a motion to reinstate Count III because the effect of the trial court's rulings was to leave them with all three counts of their complaint struck down in contravention of the court's apparent intentions. The trial court granted Plaintiffs' motion and reinstated Count III.

On January 3, 1980, Plaintiffs filed a motion to certify an interlocutory appeal under Ind.Rules of Procedure, Appellate Rule 4(B)(5). The trial court certified an interlocutory appeal and, in compliance with A.R. 4(B)(5), Plaintiffs petitioned this court and secured findings that the issue to be raised in this appeal involves a substantial question of law the early determination of which would promote a more orderly disposition of the case, and that Plaintiffs' remedy on appeal after judgment would be inadequate. Pursuant to A.R. 7.2(A)(1)(b), Plaintiffs filed an assignment of errors with this court on February 11, 1980.

We construe the court's dismissal of Counts I and II as a ruling that Plaintiffs' cause of action does not arise under Illinois law; we construe the court's reinstatement of Count III as a ruling that Plaintiffs' cause of action arises under Indiana law and a rejection of the State's arguments that, as a matter of law, the State owed no duty to Plaintiffs' daughter and was immune from liability for losses resulting from the act of a person not a governmental employee.

We reverse the dismissal of Counts I and II and reverse the reinstatement of Count III.

### ISSUES

I.  Should Illinois or Indiana substantive law be applied in this cause of action?
II.  Did the State of Indiana owe Plaintiffs' daughter a duty to exercise reasonable care in its custody and control of Michael Lee Lett?
III.  Is the State of Indiana immune from liability under Ind.Code 34–4–16.5–3(9)?

### STATEMENT OF THE FACTS

The record before this court contains indications that on April 23, 1973, the Knox Circuit Court found Michael Lee Lett to be a criminal sexual deviant under Ind.Code 35–11–3.1–1 et seq.[2] and ordered Lett committed to the care and custody of the Department of Mental Health for treatment as a criminal sexual deviant for a term of not more than 21 years or until otherwise sooner discharged in accordance with the law. Lett was to begin his commitment for treatment at the Maximum Security Division of Norman M. Beatty Hospital. On

**2.** Ind. Code 35–11–3.1–1 et seq. was repealed by Acts 1978, P.L. 2, § 3555, by Acts 1979, P.L. 87, § 15, and by Acts 1979, P.L. 294, § 1, effective September 1, 1979.

April 13, 1976, Lett escaped from Beatty Hospital and on or about April 19, 1976, he abducted, assaulted, and killed Catherine Jo Harris near her home in Newton, Illinois.

## DISCUSSION AND DECISION

*Issue I.*

The parties appear to agree that if the State is not found to be immune from suit under these facts, this cause would go to the jury under Count III if Catherine had died in Indiana. They disagree, however, as to whether the case should go to the jury under Counts I and II or Count III given that Catherine's death occurred in Illinois. It is this disagreement we address: since Catherine died in Illinois, does Illinois or Indiana substantive law apply?

In their brief, Plaintiffs contend the applicable Indiana choice–of–law rule is lex loci delicti requiring that the substantive law of the place where the injury or death occurred determines what kind of actions may be brought and by whom, for whose benefit damages are recoverable, and the type, measure, and amount of such damages. The State argues the rule of lex loci delicti is not a hard and fast one and that its application here would violate the public policy of Indiana generally and as implied in the Tort Claims Act, Ind.Code 34–4 16–.5–1 *et seq.*, particularly in one section of that act, Ind. Code 34–4–16.5–5(d). The State further contends the cause of action could not have brought in Illinois under Ind.Code 34–4–16.5–5(d)· therefore, it cannot be brought in Indiana under *Baltimore and Ohio Southwestern Railway Company v. Reed*, (1902) 158 Ind. 25, 62 N.E. 488. The State lastly argues that if this court looks to Illinois law under lex loci delicti, it should adopt the renvoi doctrine which requires the application of the Illinois choice–of–law rule as well as the internal substantive law of Illinois. Illinois would apply the substantive law of the state with the most significant contacts with the cause of action, here, according to the State, Indiana.

■■■■ This cause of action is one in tort brought under statutory law of Illinois and Indiana. It is well established as a general rule that the lex loci delicti, the law of the place where the tort was committed, is the law which governs the resulting cause of action and which is to be applied with respect to the substantive phases of torts or the causes of action therefor. The lex loci delicti determines the question of whether or not an act or omission gives rise to a right of action or civil liability for tort even though the tort is founded on statute rather than on the common law. 15A C.J.S. *Conflict of Laws* § 12(2)a. (1967).

Indiana has long followed this choice–of–law rule as well as the general rule that the tort is committed, the wrong occurs, and the cause of action arises where the injury or death occurred. *Vera Cruz v. Chesapeake & Ohio Railway Company*, (1961 N.D. Ind.) 192 F.Supp. 958; *Zirkelbach v. Decatur Cartage Co.*, (1954 N.D.Ind.) 119 F.Supp. 753; *Hellrung v. Lafayette Loan & Trust Co.*, (1951 N.D.Ind.) 102 F.Supp. 822; *Wabash Railroad Company v. Hassett, Admx.*, (1908) 170 Ind. 370, 83 N.E. 705; *Baltimore and Ohio Southwestern Railway Company, supra; Cincinnati, Hamilton and Dayton Railroad Company v. McMullen, Admr.*, (1889) 117 Ind. 439, 20 N.E. 287; *Burns Admr. v. Grand Rapids and Indiana Railroad Company*, (1888) 113 Ind. 169, 15 N.E. 230.

The Indiana Supreme Court in *Wabash Railroad Company, supra*, 170 Ind. at 375, 83 N.E. 705, said:

"No action would lie at common law for damages resulting from the death of a human being caused by the negligence or wrongful act of another. ...

The injury and death for which this action was brought occurred in Illinois, where the common law is presumed to prevail. Our statute ..., conferring a right of action for death by wrongful act, has no extraterritorial force, and it was necessary that appellee, as the basis of her complaint, plead a statute of that state creating a right of action for death caused by negligence. ...." (Citations omitted.)

The rule of law generally followed is that where a cause of action is brought in a state other than the state in which the cause of action arose, matters of a substantive nature are governed by the law of the state in which the cause of action arose, and the law of the forum is applied in order to determine what constitutes matters of substantive law and what constitutes matters of remedy and procedure. *Prudence Life Insurance Company v. Morgan*, (1966) 138 Ind.App. 287, 213 N.E.2d 900. The State does not dispute Plaintiffs' assertion that if Illinois substantive law applies, that law will determine what actions may be brought and by whom, those entitled to damages, and the type, measure, and amount of damages, citing *Zirkelbach, supra; Hellrung, supra;* and *Wabash Railroad Company, supra.* Plaintiffs concede that the Indiana Tort Claims Act prescribes procedures for and certain limitations on actions which arise under the common law and other statutes in which the defendant is the State of Indiana, *State v. Daley*, (1975) 165 Ind.App. 513, 332 N.E.2d 845, and, consequently, any recovery by Plaintiffs would be limited to $300,000 under Ind.Code 34-4-16.5-4, although recovery under the relevant Illinois statutes is otherwise unlimited.[3]

The State incorrectly cites *Baltimore and Ohio Southwestern Railway Company, supra,* and *Clow Corporation v. Ross Township School Corporation,* (1979) Ind.App., 384 N.E.2d 1077, as exceptions which demonstrate the lex loci delicti rule "should neither be applied blindly nor mechanically." In *Baltimore and Ohio Southwestern Railway Company, supra,* 158 Ind. at 27, 62 N.E. 488, the Supreme Court acknowledged the lex loci delicti rule in saying:

"The complaint . . . discloses that the accident by which appellee was injured occurred in the state of Illinois; consequently if he has a right of action against appellant, such right arose under the laws of the latter state,"

but went on to hold that the appellee, an employee of the defendant railroad, had no right of action because, under Illinois law, a master was not liable in an action by a servant for injuries sustained through negligence of a fellow servant. No cause of action accrued in Illinois which could be pursued in Indiana. In the case at bar, the law of Illinois gives rise to two causes of action which can be pursued in Indiana.

*Clow Corporation, supra,* is a contract case involving a dispute over payments among a subcontractor's supplier, the subcontractor, and a contractor. This court, in 384 N.E.2d at 1082, correctly applied the Indiana choice-of-law rule for contract actions and looked to "the law of that state with which the facts are in most intimate contact." This has no relevance to this tort action other than to show that the courts of this state show no reluctance in applying the substantive law of another state, there also Illinois, in a cause of action to which a public body of the State of Indiana is a party.

The State's next contention, that Indiana need not apply the statutes of a sister state if to do so would violate the public policy of Indiana, is correct. *State of Nevada v. Hall*, (1979) 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416. That principle, however, does not apply here because we cannot find the public policy of Indiana to be violated by the application of the Illinois statutes at issue.

The relevant Illinois statutes allow an action by the legal representative of a deceased minor's estate to recover damages for pecuniary loss on behalf of the minor's next of kin, as well as an action by the legal representative to recover damages on behalf of the estate for future lost wages,

---

**3.** The State has wisely not attempted to argue that Illinois's limitation on recovery in tort against the State of Illinois ($100,000 under S.H.A. ch. 37, § 439.8 (Supp.1980)) would apply in this case where the State of Illinois is not a party. When an Illinois citizen sues the State of Illinois, Illinois balances its interests against the interests of the citizen and affords itself limited protection by limiting the citizen's recovery. When a citizen of Illinois sues the State of Indiana, the only interest the State of Illinois has is in seeing that its citizen is as fully protected as possible.

property damage, medical and funeral expenses, and the decedent's conscious pain and suffering from the time of injury to the time of death. We note, as did the Supreme Court in *Wabash Railroad Company, supra,* that the policy of Indiana, as demonstrated by such statutes as Ind.Code 34–1–1–1, Personal representative; continuing action, and 34–1–1–2, Death from wrongful act or omission, is one favoring remedial legislation of the character of the Illinois statutes at issue. Any dissimilarity between that Illinois statutory law and its Indiana counterpart is of no consequence because it is not essential that the remedy available in Indiana be identical to that provided in Illinois in order for Indiana courts to enforce the Illinois remedy. 15A C.J.S. *Conflict of Laws* § 4(11)b. In the oft–cited case of *Loucks v. Standard Oil Co. of New York,* (1918) 224 N.Y. 99, 120 N.E. 198, 201, Judge Cardozo said:

"Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right. A right of action is property. If a foreign statute gives the right, the mere fact that we do not give a like right is no reason for refusing to help the plaintiff in getting what belongs to him. We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. Similarity of legislation has indeed this importance; its presence shows beyond question that the foreign statute does not offend the local policy. But its absence does not prove the contrary."

Our Supreme Court said in *Wabash Railroad Company, supra,* 170 Ind. at 380–81, 83 N.E. 705:

"The statutes of a state have no extraterritorial force, but they are effective within the state enacting them, and, if they create a valid right of action there, such liability may be recognized and enforced elsewhere upon proper complaint and proof. Civil rights, whether founded upon statutes or the common law, are not local, and actions to recover damages for the violation of such rights are transitory, and not confined to the state where the cause of action accrued. The circuit courts of this State are courts of general jurisdiction, and unquestionably have jurisdiction over the subject–matter of transitory actions. The jurisdiction or power of the court to afford a remedy for a legal liability is not dependent upon the question whether the right to be enforced is of statutory or of common–law origin. If a liability has been incurred, and a right of action therefor has accrued, such action may ordinarily be prosecuted in any court which has jurisdiction of such matters and can obtain jurisdiction over the parties. If the legislature, as it might have done, had spoken against the enforcement of foreign causes of action like this, the courts would readily obey its mandate. ... The failure and injustice of the common law to afford redress for a negligent injury resulting in death is recognized by the enactment of our statute creating a right of action for the benefit of the widow and next of kin. The policy of Indiana, so far as outlined or expressed by the legislature, is favorable to remedial legislation of this character. If a legal liability exists, a justice -loving people should be inclined to afford a remedy within their power, and we find nothing, either upon the ground of adverse interests or public policy, to preclude the courts of this State from entertaining jurisdiction of this action. In reaching this conclusion *we approve the modern and generally accepted doctrine, that, to justify our courts in refusing to enforce a right of action accruing under the laws of another state as against the policy of this State, the prosecution of such action must appear to be against good morals or natural justice or prejudicial to the general interests of the citizens of this State.*" (Emphasis added.)

There is no merit in the argument that the case at bar falls within the doctrine enunciated in *Wabash Railroad Company, supra.* We will not say that enforcement of Plaintiffs' rights of action accruing under

Illinois law would be against good morals or natural justice or prejudicial to the general interests of the citizens of this state. We leave the doctrine to its traditional application in cases dealing with, *inter alia*, gaming contracts, lotteries, and marriages within prohibited limits of consanguinity. 15A C.J.S. *Conflict of Laws* § 4(4)a. and (5).

■ The State's arguments that the Tort Claims Act, generally, and Ind.Code 34–4–16.5–5(d), specifically, impliedly prevent application of lex loci delicti in this case are equally unavailing.

Ind.Code 34–4–16.5–5(d) states:

"Nothing contained in this chapter shall be construed as a waiver of the eleventh amendment to the Constitution of the United States, as consent by the state of Indiana or its employees to be sued in any federal court, or as consent to be sued in any state court beyond the boundaries of the state of Indiana."

In the case at bar, the State is not being sued in either a federal court or a court of a sister state but in an Indiana court; therefore, the statute, by its express terms, does not apply. The statute expresses the legislature's intention that the State not be subjected to the judicial power of other jurisdictions, but it does not express any legislative intention that the State not be a defendant in a cause of action accruing under the laws of another state or that the rule of lex loci delicti be prohibited its traditional operation when the State is the defendant.

The State contends, however, that Ind. Code 34–4–16.5–5(d) and other sections of the Tort Claims Act demonstrate the act's "protective nature" and the legislature's "protective policy" toward the State, thus, by implication, preventing the traditional operation of lex loci delicti resulting in the submission of the State of Indiana to "laws created and defined by foreign states which are not subject to or formulated by the will of the people of Indiana."

■ The Tort Claims Act has been judicially recognized as the legislature's setting forth of the specific areas in which the State will not be liable in tort, *Roberts v.*

*State*, (1974) 159 Ind.App. 456, 307 N.E.2d 501. Ind.Code 34–4–16.5–3 describes 14 situations wherein immunity was retained by the legislature for the State and other governmental units. *Livingston v. Consolidated City of Indianapolis*, (1979) Ind.App., 398 N.E.2d 1302. It is a rule of construction that when certain items are specified or enumerated in a statute, then, by implication, other items not so specified are excluded. *Indiana Alcoholic Beverage Commission v. Baker*, (1972) 153 Ind.App. 118, 286 N.E.2d 174; *Duda v. New Prairie United School Corporation*, (1967) 140 Ind.App. 528, 224 N.E.2d 327. Directly contrary to the State's position, the legislature's failure to expressly extend immunity to the State from the operation of the lex loci delicti rule precludes this court from finding such immunity.

The State further errs in arguing this cause of action could not be brought in Illinois under Ind.Code 34–4–16.5–5(d) so it cannot be brought in Indiana under *Baltimore and Ohio Southwestern Railway Company, supra*. As noted earlier, *Baltimore and Ohio Southwestern Railway Company* stands for the proposition that the *substantive* law of the state where the tort occurred must give rise to a cause of action in that state before such cause of action may be brought in Indiana. As noted earlier, Ind.Code 34–4–16.5–5(d), *supra*, goes to jurisdiction not substance and is, therefore, not interrelated with the principle of *Baltimore and Ohio Southwestern Railway Company* as the State contends.

In passing, we note that in view of the recent United States Supreme Court ruling in *State of Nevada, supra*, the State may also be in error in contending this suit could not have been brought in Illinois because of the provisions of Ind.Code 34–4–16.5–5(d), *supra*. In that case, the plaintiffs, California residents, were injured in an automobile collision in California. The driver of the other vehicle was an employee of the University of Nevada, an instrumentality of the State of Nevada. The plaintiffs sued the State of Nevada in a California court. The Supreme Court addressed for the first

time the question whether a state may claim immunity from suit in the courts of another state, found no constitutional basis for such immunity, and upheld a California judgment of $1,150,000 against the State of Nevada although a Nevada statute limited to $25,000 any tort award against the State pursuant to its statutory waiver of sovereign immunity.

Also in passing, we note the State's reliance on *Chavez v. State of Indiana for Logansport State Hospital*, (1979) 122 Ariz. 560, 596 P.2d 698, is equally ill–placed. The suit in *Chavez* was dismissed *without prejudice* for lack of personal jurisdiction over the defendant State of Indiana because, although the State had been served under Arizona's long–arm statute, Arizona's assertion of personal jurisdiction over the State of Indiana violated the Fourteenth Amendment due process requirement of minimum contacts between the defendant and the forum state. Personal jurisdiction is not an issue in the case at bar.

■ The State's final futile effort to escape the traditional operation of the rule of lex loci delicti is its invitation to this court to adopt the renvoi theory of choice of law as the law of Indiana. Briefly stated, the renvoi doctrine states that when a question comes before a court which, according to the law of the forum as to conflict of laws, is to be determined by the law of another jurisdiction, the court must take into account the whole law of the other jurisdiction including not only the relevant substantive law of such other jurisdiction but also its rules as to conflict of laws.

■ This question has not been addressed by the Indiana state court but Judge Grant in *Hobbs v. Firestone Tire & Rubber Co.*, (1961 N.D.Ind.) 195 F.Supp. 56, concluded that if an Indiana court were to confront the issue, it would adopt the position taken by the majority of jurisdictions and text authorities and reject the renvoi doctrine. We refer the State to Judge Grant's discussion of this ancient, disfavored doctrine and we agree the doctrine is not, and should not become, a part of our law. Consequently, we need not discuss the

Illinois choice–of–law rule nor its application to the facts of the case at bar.

*Issue II.*

### Existence of a Duty under Illinois Substantive Law

■ The issue of the existence of a duty will be governed by the law of the place where Catherine died as that law is:

"to be applied with respect to the substantive phases of torts or the actions therefor, and determines the question of whether or not an act or omission gives rise to a right of action or civil liability for tort even though the tort is founded on statute rather than on the common law, and this law includes the effect of such asserted matters of defense as go to qualify the right or duty." (Footnotes omitted.)

15A C.J.S. *Conflict of Laws* § 12(2)a. The existence of a duty is a substantive phase of this action. *Holtz v. Elgin, Joliet & Eastern Railway Company*, (1951), 121 Ind.App. 175, 98 N.E.2d 245.

■ Looking to the common law of Illinois, we find that a complaint in negligence must set out the existence of a duty owed by the defendant to the plaintiffs, a breach of that duty, and an injury proximately resulting from that breach. *Cross v. Chicago Housing Authority*, (1979) 74 Ill.App.3d 921, 30 Ill.Dec. 544, 393 N.E.2d 580; *Intrater v. Thomas*, (1977) 54 Ill.App.3d 709, 12 Ill.Dec. 325, 369 N.E.2d 1339.

In the *Cross* case, the Appellate Court of Illinois recited the following law relevant to the existence of a duty owed by the State to Catherine, in 30 Ill.Dec. 544, 393 N.E.2d at 583 84:

"The existence of a duty is a question of law to be determined by the court. (*Barnes v. Washington* (1973), 56 Ill.2d 22, 26, 305 N.E.2d 535; *Fancil, supra* 60 Ill.2d [552] at 555, 328 N.E.2d 538.) Although the existence of a legal duty requires that the occurrence be reasonably foreseeable, and more than a mere possibility (*Cunis*, [*v. Brennan*] *supra* 56 Ill.2d 372 at 375–76, 308 N.E.2d 617; *Martin v. Usher* (1st

Dist. 1977), 55 Ill.App.3d 409, 410, 13 Ill. Dec. 374, 371 N.E.2d 69), the imposition of a duty does not depend on foreseeability alone (*Cunis, supra* 56 Ill.2d at 375, 308 N.E.2d 617; *Trice v. Chicago Housing Authority* (1st Dist. 1973), 14 Ill.App.3d 97, 100, 302 N.E.2d 207, leave to appeal denied 54 Ill.2d 599). Rather, in determining whether a duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant must also be taken into account. *Barnes, supra* 56 Ill.2d at 29, 305 N.E.2d 535; *Trice, supra* 14 Ill.App.3d at 100, 302 N.E.2d 207.

\*    \*    \*    \*    \*    \*

*A duty to protect one against the criminal attacks of third persons exists only where the actor, whose negligent conduct creates the risk, is under a special responsibility toward the one who causes the harm,* or where a special relationship exists between the negligent actor and the person suffering the harm. (*Fancil, supra* 60 Ill.2d at 559, 328 N.E.2d 538; Comment (e), Section 302B, Restatement (Second) of Torts; Section 315, Restatement (Second) of Torts). *The special relationships between the actor and the person causing the harm giving rise to such a duty include that of a parent-- child, a master–servant, a possessor of land–licensee, and a person taking charge of persons having dangerous propensities.* (Sections 316–319, Restatement (Second) of Torts.)" (Emphasis added.)

Especially relevant to the duty issue in this case are two of the sections of the Restatement (Second) of Torts (1965) cited by the *Cross* court:

"TITLE A. DUTY TO CONTROL CONDUCT OF THIRD PERSONS

§ 315. General Principle

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct . . . .

§ 319. Duty of Those in Charge of Person Having Dangerous Propensities

One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

That Illinois would recognize this claim in tort against the State of Indiana is further indicated by the fact that Illinois recognizes such claims against itself. Except as provided by its legislature, Illinois ended its sovereign immunity by constitutional amendment in 1972, Illinois Constitution, Article 13, Section 4, and established the Illinois Court of Claims with exclusive jurisdiction over, *inter alia*, all claims against the State for damages in cases sounding in tort. S.H.A. ch. 37, § 439.8 (Supp.1980).

Numerous cases dealing with escapees from Illinois state institutions who caused personal injuries and property damage to claimants are reported in the Illinois Court of Claims Reporter, establishing the following Illinois law: The State is under a duty to exercise reasonable care in restraining and controlling dangerous persons committed to its custody so that they will not have the opportunity to inflict foreseeable injury upon others. *Callbeck v. State of Illinois*, (1958) 22 C.C.R. 722. This is the same duty as would apply to a private person or private institution caring for a mentally ill person. *Dever v. State of Illinois*, (1974) 29 C.C.R. 374. The doctrine of res ipsa loquitur applies so that it is incumbent upon the State to come forward with evidence to show it was not negligent; without such showing, negligence is presumed, based on inferences to be drawn from the fact of escape. *Castoro v. State of Illinois*, (1969) 26 C.C.R. 468. The hospital staff is charged with constructive knowledge of a patient's behavioral history. *Dever, supra*. A finding of negligence does not require a finding that the specific act committed could have been foreseen. *Goldring*

*v. State of Illinois*, (1971) 27 C.C.R. 165. *See also Stevenson Auto and Electrical School v. State of Illinois*, (1969) 27 C.C.R. 20, and *Smith v. State of Illinois*, (1974) 30 C.C.R. 167 (two additional cases dealing with escapees from state mental hospitals).

▆ Clearly, Illinois substantive law recognizes a duty on the part of the State of Indiana to exercise reasonable care in restraining and controlling Lett so that he would not have the opportunity to inflict foreseeable injury upon others.

The State makes two "no duty" arguments in relation to Illinois law: 1) that the State owed no private duty to Catherine· and 2) that Catherine was not a foreseeable victim of Lett.

For the first proposition, the State cites three cases in which Illinois courts said or held that municipalities are not liable for the failure of their police officers to prevent the torts and illegal acts of other persons absent special circumstances which create a duty owed by the police to an individual: *Huey v. Town of Cicero*, (1968) 41 Ill.2d 361, 243 N.E.2d 214; *Gardner v. Village of Chicago Ridge*, (1966) 71 Ill.App.2d 373, 219 N.E.2d 147; and *Adamczyk v. Zambelli*, (1960) 25 Ill.App.2d 121, 166 N.E.2d 93. Under the Illinois case law discussed above, these authorities are shown to be inapplicable to the circumstances at hand, where, under *Cross, supra; Callbeck, supra*; and Restatement (Second) of Torts §§ 315 and 319, *supra*, the State *had charge of* Lett with resulting duties.

▆ Under its second proposition, the State attempts to argue to this court what is rightly a question for the jury on remand and trial: whether Catherine's death at the hands of Lett was reasonably foreseeable, an element of Plaintiffs' case under *Cross, supra; Stevenson Auto and Electrical School, supra*; and *Callbeck, supra*. Under Illinois law, foreseeability is one of the tests of proximate cause, 28 Illinois Law and Practice *Negligence* § 105 (1957), generally a question of fact to be decided at trial by the jury—or by the court if the evidence is such that, as a matter of law, reasonable

men could not disagree. This determination cannot be made or reviewed at this stage given the posture in which this case is before this court.

*Impact of the Tort Claims Act*

▆ While the State will have available at trial all the defenses afforded by the substantive law of Illinois, 15A C.J.S. *Conflict of Laws* § 12(2)a., the State will also have available any defenses provided by the Indiana Tort Claims Act, as interpreted by Indiana courts. That act applies to any cause of action against the State of Indiana arising in Indiana and pursued in an Indiana court because of the vestiges of sovereign immunity retained by the legislature. This is so because the State, as the sovereign, possesses the right as a matter of policy to provide conditions for bringing suits against itself, the limits of such suits, defenses, and the procedures therefor. Article 4, Section 24, Constitution of the State of Indiana; *Campbell v. State*, (1972) 259 Ind. 55, 284 N.E.2d 733; *Perkins v. State*, (1969) 252 Ind. 549, 251 N.E.2d 30; *Gonser v. Board of Commissioners for Owen County*, (1978) Ind.App., 378 N.E.2d 425. Therefore, while the State has available to it all the defenses to Plaintiffs' claim provided by Illinois substantive law—contributory negligence, rebuttal of one or more of the elements of Plaintiffs' prima facie case, etc., the State has any additional defenses provided by the Tort Claims Act.

The State at various junctures in the proceedings below argued one of two bases of immunity under these facts given the Tort Claims Act. One of the arguments is relevant to the State's "no duty" contention and is based on Ind.Code 34–4–16.5–3(6):

"A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

\* \* \* \* \* \*

(6) the performance of a discretionary function[.]"

This court has interpreted this subsection to mean that the State is liable for losses resulting from the performance of a ministerial function or from the performance of

a discretionary function involving the breach of a private duty, and is immune from liability only for losses resulting from the performance of a discretionary function involving the breach of a public duty. *Seymour National Bank v. State*, (1979) Ind.App., 384 N.E.2d 1177.

In making its argument that the State is immune under Ind.Code 34-4-16.5-3(6) because the State owed no private duty to Catherine, the State overlooks the relevant threshold question. We must first determine whether the function of the governmental entity here involved, the Department of Mental Health,[4] is ministerial or discretionary. If we find the function to be a ministerial one, which we do, our inquiry under Ind.Code 34-4-16.5-3(6) is finished. *See Mills v. American Playground Device Co. and City of Gas City*, (1980) Ind.App., 405 N.E.2d 621.

A duty is discretionary:

"[W]hen it involves on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way[.]"

*Adams v. Schneider*, (1919) 71 Ind.App. 249, 124 N.E. 718, 720.

A ministerial act is:

"[O]ne which a person performs in a given state of facts in a prescribed manner, in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done."

*Galey v. Board of Commissioners of the County of Montgomery*, (1910) 174 Ind. 181, 91 N.E. 593, 594.

Under the Criminal Sexual Deviancy Act, Ind.Code 35-11-3.1-1 *et seq.*, upon proper petition, notice, and hearing, one convicted of a non-excluded sexual offense and found by the trial court probably to be a criminal sexual deviant shall be committed to the care of the Department of Mental Health for observation, evaluation, and diagnosis for a period not to exceed 120 days. Within the 120 days, the Department must file a written report with the trial court. If the report concludes the person is a treatable criminal sexual deviant, the trial court may commit the person to the care of the Department of Mental Health which shall recommend the appropriate psychiatric facility, which recommendation the trial court must accept. The length of the deviant's commitment shall not exceed the maximum penalty for the crime for which he was convicted. Under the terms of the court order committing Lett, he was to be in the custody of the Department of Mental Health for a term of not more than 21 years or until otherwise sooner discharged in accordance with the law.

Applying the above-stated definitions of discretionary and ministerial functions, we find that the act of maintaining such custody of Lett was a ministerial function for which there was a duty to exercise reasonable care. *See Mobile Enterprises, Inc. v. Conrad*, (1978) Ind.App., 380 N.E.2d 100. The Department could not exercise discretion and determine whether or not to maintain custody of Lett, but had to maintain such custody in obedience to the mandate of the Knox Circuit Court without regard to, or the exercise of, its own judgment as to the propriety of so doing. The Criminal Sexual Deviancy Act provides methods by which, in accordance with the law, Lett could be discharged from the Department's custody before the termination of the 21 year period. Escape is not included.

Although the phrase "discretionary function" in Ind.Code 34-4-16.5-3(6) must be interpreted according to Indiana law as we have done, it is interesting to note that although Illinois also maintains immunity for discretionary functions, *Watson v. St. Annes Hospital*, (1979) 68 Ill.App.3d 1048, 25 Ill.Dec. 411, 386 N.E.2d 885; *Anderberg v. Newman*, (1972) 5 Ill.App.3d 736, 283 N.E.2d 904, Illinois has not seen fit to preclude claims against itself stemming from

---

**4.** We perceive no way in which the Department of Corrections can be implicated under the facts of this case.

harm caused by escapees from state institutions as shown by the Illinois Court of Claims cases cited above.

*Issue III.*

██ The State's final argument under the Tort Claims Act is that Lett was not a governmental employee; therefore, the State is immune under Ind.Code 34–4–16.5–3(9):

> "A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:
>
> \*      \*      \*      \*      \*      \*
>
> (9) the act or omission of someone other than the governmental entity [or] employee[.]"

To make this argument, the State must misread the complaint which, in effect, alleges that acts or omissions of governmental employees resulted in Lett's escape and thus were a proximate cause of Catherine's death. Thus, the acts and omissions complained of are those of governmental employees and the statute by its terms does not apply.

██ Although Indiana has long followed the general principle of proximate causation that the intervening conduct of a third party precludes recovery only where the third party's conduct was a new, independent, intervening force not reasonably foreseeable at the time of the defendant's wrongful conduct, *Nickey v. Steuder*, (1905) 164 Ind. 189, 73 N.E. 117, the State appears to argue that the subsection should be interpreted to preclude the State's liability if *any* third party intervenes, whether foreseeable or not. The State was not so protected before the effective date of the Tort Claims Act, *State v. Thompson*, (1979) Ind. App., 385 N.E.2d 198; *Department of Commerce v. Glick*, (1978) Ind.App., 372 N.E.2d 479; *Snyder, Admx. v. Mouser*, (1971) 149 Ind.App. 334, 272 N.E.2d 627, which act is recognized as merely a compilation of the prior existing common law, with one exception not relevant here. Foust, 1974 Survey of Indiana Law of Torts, 8 Indiana Law Review 264 (1974); *Seymour National Bank, supra.* If Ind.Code 34–4–16.5–3(9) were to be construed as argued by the State, it would modify a fundamental rule of·the common law. To have that effect, a statute must be clear and concise in its expression of such an intent, and such an intendment cannot be supported by mere implication. 26 I.L.E. *Statutes* § 174 (1960). The statute expresses no such intent and affords the State no immunity under these facts.

The judgment of the trial court is reversed. Counts I and II should be reinstated and Count III dismissed. The cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

ROBERTSON, P. J., concurs.

RATLIFF, J., concurs with opinion.

RATLIFF, Judge, concurring.

I agree that the substantive law of Illinois applies in this case. However, in reaching this conclusion, I have applied a different legal theory from that employed by the majority. The majority opinion arrives at its decision to apply Illinois substantive law through the application of the traditional conflicts of law rule of *lex loci delicti.*[1] I would prefer to reach this result through application of the so-called "modern rule" or the "most significant relationship" approach[2] espoused by the landmark case of *Babcock v. Jackson*, (1963) 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, and adopted by Restatement 2d of Conflict of Laws, § 145.

The traditional rule in conflict of laws cases involving multistate torts has been to apply the substantive law of the place of tort–the *lex loci delicti* rule. 16 Am.Jur.2d, *Conflict of Laws*, § 98 (1979); 15A C.J.S. *Conflict of Laws* § 12(2)(a) (1967); Annot.

---

1. This rule has been defined as the law of the place of the wrong; the law of the place of the tort; the law of the place of the injury.

2. This approach has also been denominated the "center of gravity" approach and the "dominant contacts" approach. 16 Am.Jur.2d, *Conflict of Laws*, § 103 (1979); 15A C.J.S. *Conflict of Laws* § 8(4) (1967); R.A. Leflar, American Conflict of Laws, 3d Ed., § 136 (1977).

29 A.L.R.3d, 603 at 613–14 (1970). Indiana followed this rule in the earlier cases cited in the majority opinion. *Wabash Railroad Co. v. Hassett Admr.*, (1908) 170 Ind. 370, 83 N.E. 705; *Baltimore & Ohio Southwestern Railway Co. v. Reed*, (1902) 158 Ind. 25, 62 N.E. 488; *Burns, Admr. v. Grand Rapids & Indiana Railroad Co.*, (1888) 113 Ind. 169, 15 N.E. 230.[3]

For many years, *lex loci delicti* was the general rule, and may still be the general rule in multistate tort cases. 15A C.J.S. *Conflict of Laws* § 12(2)(a) (1967); 29 A.L.R.3d 613–14 (1970). Application of the rule of *lex loci delicti* inflexibly, indiscriminately, and without exception was justified on the ground that such application of the rule promoted certainty, predictability, uniformity of result, and was easy to apply. *Babcock v. Jackson, supra*; 16 Am.Jur.2d, *Conflict of Laws*, § 99 (1979). However, many courts and legal scholars questioned the wisdom of the rigid and inflexible application of the traditional rule in all cases regardless of the circumstances of the case. *Babcock v. Jackson, supra.* 16 Am.Jur.2d, *Conflict of Laws*, §§ 98, 102 (1979). It has been said:

"Dissatisfaction with the mechanical application of the lex loci delicti rule has in recent years led a number of courts to reject that rule completely, and to apply a rule that requires of the forum court analysis of all the facts and factors involved to determine what law is most appropriate, under the particular analytical theory or process employed. While none of the various theories and principles which these courts have applied constitutes a rule for resolving a conflict of laws in the same sense as the rule of lex loci delicti, since each necessarily depends upon a subjective analysis of objective factors, it may fairly be said, despite disagreement among scholars and a lack of uniformity among courts as to how a choice between competing laws is to be made in a multistate tort situation, that a 'modern rule' has evolved, that is, there is a duty imposed on the forum court to undertake an analytical approach to the facts presented in a multistate tort action to determine what law should govern the substantive rights of the parties." (Footnotes omitted.)

16 Am.Jur.2d, *Conflict of Laws*, § 102, at 168–70 (1979). (*See also* : 29 A.L.R.3d 622–23 (1970)· 15A C.J.S. *Conflict of Laws* § 8(4) (1967).

The supposed virtues of certainty, ease of application, and predictability fostered by the inflexible, mechanical application of *lex loci delicti* to all multistate tort cases came to be viewed as vices in some cases where it was felt the rule led to unjust results. Such a situation gave rise to the landmark case of *Babcock v. Jackson, supra.* In *Babcock*, a New York plaintiff, Miss Babcock, left Rochester, New York, with friends, Mr. and Mrs. Jackson, also of Rochester, New York, in the friends' car which was garaged, licensed, and insured in New York for a weekend trip to Ontario, then to return to New York. While in Ontario, the driver, Mr. Jackson, lost control of the car, causing a collision with a stone wall severely injuring Miss Babcock. Babcock sued Jackson on a negligence theory. An Ontario statute provided that the driver was not liable in damages to a non-paying guest for injuries or death. Thus, application of the traditional rule would have denied Babcock a right of action, and, in the view of the New York Court of Appeals produced an

---

**3.** It is significant that the latest Indiana case cited in support of *lex loci delicti* as the rule in Indiana was decided in 1908 prior to the controversy concerning the propriety of the rule as an absolute and inflexible legal principle. This disagreement among courts and scholars with the traditional rule is discussed in the ensuing paragraphs of this opinion.

The majority also cites three federal cases from the Northern District of Indiana for the proposition that *lex loci delicti* is the choice of law rule followed in Indiana. Those cases are *Vera Cruz v. Chesapeake & Ohio Railway Co.*, (1961 N.D.Ind.) 192 F.Supp. 958; *Zirkelbach v. Decatur Cartage Co.*, (1954 N.D.Ind.) 119 F.Supp. 753; and *Hellrung v. Lafayette Loan & Trust Co.*, (1951 N.D.Ind.) 102 F.Supp. 822. The efficacy of these decisions is at least questionable in the light of *Watts v. Pioneer Corn Co.*, (7th Cir. 1965) 342 F.2d 617, and *Gianni v. Fort Wayne Air Service, Inc.*, (7th Cir. 1965) 342 F.2d 621, which interpret Indiana law as following the most significant relationship approach. *Watts* and *Gianni* are cited later in the body of this opinion.

anomalous and unjust result. The court wisely rejected *lex loci delicti* in favor of what it called the "center of gravity" or "grouping of contacts" doctrine saying at 240 N.Y.S.2d 743, 191 N.E.2d 283:

> "The 'center of gravity' or 'grouping of contacts' doctrine adopted by this court in conflicts cases involving contracts impresses us as likewise affording the appropriate approach for accommodating the competing interests in tort cases with multi–State contacts. Justice, fairness and 'the best practical result' [citation omitted] may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation. The merit of such a rule is that 'it gives to the place "having the most interest in the problem" paramount control over the legal issues arising out of a particular factual context' and thereby allows the forum to apply 'the policy of the jurisdiction "most intimately concerned with the outcome of [the] particular litigation." ' " (Citation omitted.)

The theory advanced by *Babcock* is indeed the position adopted by the Restatement 2d of Conflict of Laws, § 145 (1971) which reads:

> "(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> "(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

> "These contacts are to be evaluated according to their relative importance with respect to the particular issue."

The Appellate Court of this state attempted to reject the traditional rule in *Witherspoon v. Salm*, (1968) 142 Ind.App. 655, 237 N.E.2d 116 (superseded by Supreme Court opinion (1969) 251 Ind. 575, 243 N.E.2d 876). In *Witherspoon*, Judge Carson stated at 142 Ind.App. 667, 237 N.E.2d 116:

> "There seems to be only one meritorious argument for the inadvertent application of the substantive law of the 'situs of the wrong.' That conclusion is that such application would render predictability and stability in the area of conflicts of law."

And further at 142 Ind.App. 670, 237 N.E.2d 116:

> "We believe the more logical basis for a choice of conflicting law could be stated: *Given a factual and legal situation, involving an actual conflict of law, which state has the greater interest in having its law applied?*" (Original emphasis.)

In reversing *Witherspoon*, the Supreme Court found there was no issue of whether Indiana or Kentucky law applied. There being no issue of choice of law, it was, of course, unnecessary for the Supreme Court to consider whether the "traditional rule" or the "modern rule" was the proper rule to apply. Although the Appellate Court opinion in *Witherspoon* may lack precedential value because of the reversal by the Supreme Court, it is, nevertheless, noteworthy in that it clearly points the direction the Appellate Court wanted to go in rejecting *lex loci delicti* in favor of a more analytical approach.

Cases from the Federal system applying Indiana law have interpreted that law as following the most significant relationship theory in choosing the applicable substantive law in multistate tort situations. *Watts v. Pioneer Corn Co.*, (7th Cir. 1965) 342 F.2d 617; *Gianni v. Fort Wayne Air Service, Inc.*, (7th Cir. 1965) 342 F.2d 621. (*But see: Bowen v. United States*, (7th Cir. 1978) 570 F.2d 1311, where the court states that the District Court held *lex loci delicti* to be the rule in Indiana which ruling was

not questioned by the plaintiff, yet points out in footnote 18 its own prior rulings in *Watts* and *Gianni*.)

I believe the more analytical approaches [4] set forth in *Babcock v. Jackson, supra*, and Restatement 2d of Conflict of Laws, § 145 should be applied in this case, and that we should reject any further mechanical, inflexible application of *lex loci delicti*. Under the Restatement or Babcock rule, clearly Illinois law bears the most significant relationship to the occurrence and parties involved. The deceased was an Illinois resident and was killed in Illinois. Her parents and her representatives are likewise Illinois residents. The persons who will benefit from any recovery are domiciled in Illinois. Clearly, Illinois has the most significant relationship or dominant interest. Therefore, Illinois substantive law applies. But, Illinois law applies because Illinois has the most significant relationship to the occurrence and parties, not because of blind adherence to, and mechanical, inflexible application of, *lex loci delicti* in all cases, regardless of circumstances.[5]

I also concur with the majority in their conclusions concerning the applicability of the Indiana Tort Claims Act. I also believe this result would be reached by application of the "most significant relationship" approach.

Therefore, I concur with the majority's application of Illinois substantive law in this case. My quarrel with the majority opinion is that it would perpetuate *lex loci*

*delicti* as an inflexible rule always to be applied in multistate tort cases thereby binding us to an archaic concept which is being abandoned by more and more courts.[6] Although the result would not be changed in this case, blind adherence to *lex loci delicti* and the mechanical, inflexible application of that doctrine eventually will lead to such an anomalous and unjust result that we will be compelled to repudiate that doctrine. The time is now.

In all other respects, I concur with the majority opinion.

---

**4.** In addition to the most significant relationship test, center of gravity, or dominant contacts approach, there are other "modern rule" theories or concepts which have been designated as "governmental interests" approach and "choice–influencing considerations" approach. These approaches and the "most significant relationship" approach are to some extent overlapping. For discussion of all of these approaches see: 16 Am.Jur.2d, *Conflict of Laws*, §§ 103, 105 (1979); Annot. 29 A.L.R.3d 603, *et seq.* (1970); R.A. Leflar, American Conflicts of Law, 3d Ed. (1977), §§ 135–138.

**5.** Indeed, in most multistate tort cases, the law of the place of the tort will continue to control. In cases where the conduct and injury are in different states, the law of the state where the injury occurred will generally be applied. This

is so because in most cases the place of the tort will have the most dominant interest. 16 Am. Jur.2d, *Conflict of Laws*, § 107 (1979). Indeed, New York cases following *Babcock v. Jackson, supra*, have said that *lex loci delicti* is still the normal rule in most cases. It is the application of that doctrine indiscriminately and without exception that is the evil which the modern rule was designed to avoid. *Neumeier v. Kuehner*, (1972) 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454.

**6.** As Professor Leflar has said: "A number of American states still follow lex loci delicti in their most recent decisions, though the number of such states decreases every year." R.A. Leflar, American Conflicts of Law, 3d Ed. (1977) § 132, at 267.