Fred HAGER, Plaintiff–Appellant,

v.

NATIONAL UNION ELECTRIC CO. d/b/a the Kent Company, Defendant–Appellee.

No. 87–2673.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1988.
Decided Aug. 12, 1988.

Tony H. Abbott, Abbott & Walker, Indianapolis, Ind., for plaintiff-appellant.

Roy G. Davis, Keck, Mahin & Cate, Peoria, Ill., for defendant-appellee.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

The appellant, Fred Hager, appeals from a judgment of the district court granting summary judgment on his claim of retaliatory discharge against his former employer. The district court, applying Indiana choice of law rules, determined that the law of New York governed the rights of the parties. It further determined that New York does not recognize the tort of retaliatory discharge. For the reasons set forth in this opinion, we vacate the judgment of the district court and remand the case for further consideration.

# I

## Background

### A. *Facts*

The Kent Company (Kent) manufactures commercial vacuums and related items. Its corporate headquarters is in Elkhart, Indiana. Mr. Hager was a regional sales manager for Kent from 1978 until his discharge on April 22, 1985. As regional sales manager, Mr. Hager sold Kent products in his territory, which included portions of New York, New Jersey and Connecticut. He is a resident of Connecticut. In 1983 and 1984, over fifty percent of Mr. Hager's commissions resulted from sales in New York. In his complaint, Mr. Hager alleged that he refused to participate in a scheme to discriminate in price between different distributors of Kent with respect to products of similar grade and quality. He claimed that, as a result of his refusal to engage in activity violative of the antitrust laws, Kent decided to terminate his employment. On April 22, 1985, at a rest stop on the New Jersey Garden State Parkway, Joseph Carona, Mr. Hager's divisional sales manager, informed Mr. Hager of his discharge. Mr. Hager then filed this action and sought damages in excess of $20,000, plus compensation for loss of business reputation and attorneys' fees. Kent submitted that the rights of the parties were governed by the law of New York which does not recognize a cause of action for retaliatory discharge.

### B. *Opinion of the District Court*

Noting that it was required to apply the choice of law rules of Indiana, see *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the district court held that Indiana would apply the *lex loci delicti* approach to determine the applicable substantive law. Under this approach, said the district court, it was necessary to apply the substantive law of the state "where the tort was committed or the injury occurred." *Hager v. National Union Elec. Corp.*, No. IP 86–268–C, order at 4 (S.D.Ind. Sept. 29, 1987) (citing *Maroon v. Indiana Dept. of Mental Health*, 411 N.E.2d 404, 409 (Ind.Ct.App.1980)). It then reasoned:

> Plaintiff's injury from his discharge is a loss of income. This income is based on commissions earned from plaintiff's sales of defendant's products to distributors in Territory 214. During 1983 and 1984, the last two full calendar years of plaintiff's employment with defendant, approximately 56% of plaintiff's commissions were earned from sales to distributors in New York. Since the majority of plaintiff's lost commissions or income will occur from lost sales in New York, plaintiff suffers his injury there. Consequently, the substantive law of New York will govern this case.

*Id.* at 5.

### C. *Contentions of the Parties*

Mr. Hager agrees with the district court that, in Indiana, the general choice of law rule governing torts is *lex loci delicti*. However, he contends that the district court erred in applying that rule. In his view, for most torts including wrongful discharge, *lex loci delicti* requires that the court apply the law of the place where the *defendant* committed the last act necessary for liability. In Mr. Hager's view, it is only in the case of fraud or misrepresentation that the court focuses on the place where the *plaintiff* relied upon the earlier acts of the defendant. Here, submits Mr.

Hager, the district court erroneously treated retaliatory discharge like fraud and misrepresentation and applied the law of the state where the plaintiff suffered the greatest part of his loss. Rather, argues Mr. Hager, the district court should have applied the general rule and looked to the law of the state where the defendant last acted. Here, that state can be either Indiana, where the corporate decision was made, or New Jersey, where the defendant's agent told the plaintiff of his discharge. Alternatively, Mr. Hager suggests that, if the place where he incurred a loss is to govern, the court ought to apply the law of Connecticut:

> Even though Hager's commissions were generated from sales in New York, New Jersey and Connecticut, his wages in payment of his services were received only in Connecticut, and that is where he suffered any economic impact from the decision to discharge him in retaliation for his refusal to perform an illegal act.

Appellant's Br. at 15.

Kent agrees that the governing principle is *lex loci delicti*. It agrees with Mr. Hager that, with respect to the tort of retaliatory discharge, the courts of Indiana have not identified clearly the place where the last event necessary for the imposition of liability takes place:

> The fact is that Indiana state courts have yet to decide what final act gives rise to an action for wrongful discharge. Given Hager's request for economic relief and the fact that he was compensated on the basis of commissions tied to sales in specific states, the instant action should be governed, as the District Court concluded, by the substantive law of the state where the majority of Hager's alleged losses were incurred.

Appellee's Br. at 6.

## II

### Analysis

#### A.

As the parties acknowledge, a district court whose jurisdiction is predicated on diversity of citizenship must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir. 1981). In this case, this requirement presented the district court with a most difficult task. Indiana traditionally has applied the *lex loci delicti* rule. This rule has been stated in a variety of formulations. For instance, in *Lee v. Lincoln National Bank & Trust Co.*, 442 N.E.2d 1147 (Ind. Ct.App.1982), the court said that "[s]imply stated, the law of the *location of the tort* is applicable in a tort action for recovery of damages." *Id.* at 1148 (emphasis supplied); *see also Eby v. York–Div., Borg–Warner*, 455 N.E.2d 623, 626 (Ind.Ct.App.1983). In *Maroon v. Indiana Department of Mental Health*, 411 N.E.2d 404 (Ind.Ct.App.1980), the court articulated the standard as "the law of the place *where the tort was committed.*" *Id.* at 409 (emphasis supplied). "[T]he wrong occurs, and the cause of action arises," continued the court, "where the injury or death occurred." *Id.* However, this latter formulation also has been described as "the place where the last event necessary to make an actor liable for an alleged tort takes place." *Lambert v. Yellowbird, Inc.*, 496 N.E.2d 406, 409 (Ind. Ct.App.1986). In most situations, these semantical variances are of no practical consequence because any of the formulations point to the application of the same law. However, when, as in the case before us, the event or transaction in question has a significant relationship with several states, these differences in language become very significant. *See, e.g., Alabama Great S.R. R. v. Carroll*, 97 Ala. 126, 11 So. 803 (1892).[1] Such an ambiguity is inherent in a mechanistic jurisdiction-selecting formula such as *lex loci delicti* and no doubt has had a catalytic effect in the decision of many states to abandon the *lex loci delicti* rule. *See Babcock v. Jackson*, 12 N.Y.2d

---

1. In *Carroll,* the plaintiff, a brakeman on the defendant's railroad, was injured in Mississippi due to a break in a defective car link. Both parties were residents of Alabama and the plaintiff was hired there. The evidence showed negligence in the inspection of the links in Ala-

473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).[2]

The district court's task was made even more difficult by the fact that no court in Indiana has identified squarely the last event necessary to give rise to the tort of retaliatory discharge. Nor have we found a helpful decision from another American jurisdiction. This lack of authority is no doubt due to the fact that many states that recognize the tort of retaliatory discharge also have adopted a choice of law rule other than *lex loci delicti*.[3]

■ Since the decision of the district court, the Supreme Court of Indiana has supplied additional—and highly significant—guidance in the application of the traditional *lex loci delicti* test. In *Hubbard Manufacturing Co. v. Greeson*, 515 N.E.2d 1071 (Ind.1987), a case decided after the decision of the district court in this case, the Indiana Supreme Court significantly clarified its approach to the *lex loci delicti* rule. First, it clarified the preferred formulation of the *lex loci delicti* test. "The tort is said to have been committed in the state where the *last event necessary to make an actor liable* for the alleged wrong takes place." *Id.* at 1073 (emphasis supplied). In stating its preference for this formulation, the Supreme Court of Indiana adhered to the language contained in section 377 of the original Restatement of Conflicts. *See Restatement of Conflicts of Laws* § 377 (1934). Second, while adhering to this traditional approach, the court also created a "safety valve" for those cases where application of the basic rule would lead to the application of the law of a state that would have little connection with the underlying cause of action:

A court should be allowed to evaluate other factors when the place of the tort is an insignificant contact. In those instances where the place of the tort bears little connection to the legal action, this Court will permit the consideration of other factors such as:

> 1) the place where the conduct causing the injury occurred;
>
> 2) the residence or place of business of the parties; and
>
> 3) the place where the relationship is centered.

Restatement (Second) of Conflicts of Laws § 145(2) (1971). These factors should be evaluated according to their relative importance to the particular issues being litigated.

*Hubbard,* 515 N.E.2d at 1073–74.

### B.

We believe that the district court ought to have the opportunity to reconsider its decision in light of this most significant pronouncement from the Supreme Court of Indiana. Such a course is the most appropriate one for several reasons. First, we believe that the quality of the final interpretation of Indiana law will be enhanced greatly if the matter is first decided by "a district judge experienced in the law of the state...." *Buehler Corp. v. Home Ins. Co.,* 495 F.2d 1211, 1214 (7th Cir.1974). *See generally Bernhardt v. Polygraphic Co. of Am.,* 350 U.S. 198, 204–05, 76 S.Ct. 273, 276–77, 100 L.Ed. 199 (1956). Second, it is not at all certain that, if the district court had had the benefit of *Hubbard,* he necessarily would have reached the same decision. Nor are we certain that the parties would have presented the same arguments or developed the record in the same manner.[4]

bama. Nevertheless, the court held that Mississippi law applied because the cause of action arose there when the injury occurred. 11 So. at 806.

2. These new approaches are not, however, without their own difficulties. *See, e.g., Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972) (pointing out the lack of predictability inherent in the modern government interest analysis approach).

3. *See, e.g., Rupinsky v. Miller Brewing Co.,* 627 F.Supp. 1181 (W.D.Pa.1986) (applying government interest analysis under Pennsylvania law); *Oakes v. Oxygen Therapy Serv.,* 363 S.E.2d 130 (W.Va.1987) (applying most significant contacts analysis under West Virginia law).

4. In this regard, we note that the particulars of the extent to which the plaintiff centered his business affairs in Connecticut, while argued before us on appeal, do not appear with the

Accordingly, we vacate the judgment of the district court and remand the case for further proceedings in conformity with this opinion. Each party will bear its own costs in this court.

It Is So Ordered.

same degree of precision in the record before   this court.